# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2932

_____

First Union National Bank, as Trustee    *
of the Southeast Timber Leasing    *
Statutory Trust,    *
   *
       Appellant,    *   Appeal from the United States
   *   District Court for the
    v.    *   Eastern District of Arkansas.
   *
Pictet Overseas Trust Corp., Ltd.,    *
Trustee of Henrietta Y. Jones Trust,    *
   *
       Appellee.    *

_____

Submitted: September 25, 2006
Filed: January 22, 2007

_____

Before WOLLMAN, BRIGHT, and BOWMAN, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

This case is once again before us. In our prior ruling, we reversed and remanded for further proceedings. First Union Nat'l Bank v. Pictet Overseas Trust Corp., Ltd., 351 F.3d 810, 816 (8th Cir. 2003) (Pictet I) (hereinafter we refer to the parties as First Union and Pictet). On remand, the district court entered summary judgment in favor of Pictet, holding that First Union breached a fiduciary duty it owed in its individual capacity to Pictet. First Union appeals, contending that the district court erred in holding that the law of the case doctrine requires a finding of fiduciary

duty, urging us to hold that no fiduciary duty existed, and further requesting that we remand with instructions to grant it summary judgment on the basis of a statutory defense barring individual liability that was not addressed by the district court. We hold that the law of the case doctrine does not apply and that the defense has been constructively pled, and we thus reverse and remand for further proceedings.

## I. Facts and Posture

The factual and procedural background of this case is detailed in Pictet I, and we recount and supplement that background as follows. On May 1, 1998, the Southeast Timber Leasing Statutory Trust (Trust) was formed as a business trust organized under the Connecticut Statutory Trust Act, see Conn. Gen. Stat. Ann. §§ 34-500 *et seq.*, with First Union as trustee. The Trust was formed to purchase First Land and Timber (FLT), an Arkansas corporation, and then, through a series of mergers with other entities, merge the surviving entity into the Trust itself and distribute its assets to the Trust beneficiaries. The trust agreement narrowly circumscribed the trustee's control of trust assets.

Pictet, in its capacity as trustee of the Henrietta Y. Jones Trust, held shares of FLT at the time of the merger. Pictet exercised its statutory right to dissent from the merger and recover fair value for its shares by following the procedures enumerated in the Arkansas Business Corporation Act (Arkansas Act). See Ark. Code Ann. § 4-27-1301 *et seq.* This included notifying First Union of its dissent, tendering its shares, and providing its own estimate of fair value–$5.1 million.

First Union set $3.8 million aside in a Golden Gate Bank account, which represented the *pro rata* value of Pictet's shares under the merger agreement. The remaining merger consideration, including money placed in a holdback escrow account intended to indemnify or reimburse "loss parties," was distributed to the non-dissenting shareholders in accordance with the merger agreement and associated

exchange agreement. At specified intervals, in accordance with the exchange agreement, the holdback monies were released by the escrow agent to another bank for distribution to former shareholders. The last such distribution occurred in December 1999.

In March 1999, First Union filed suit against Pictet in an Arkansas state court to determine the fair value of Pictet's shares. Pictet removed the case to federal court and filed a counterclaim alleging that First Union's untimely lawsuit fixed the value of Pictet's shares at $5.1 million plus interest. On May 8, 2000, by consent order, First Union was required to pay Pictet the $3.8 million held for it in the Golden Gate Bank account. Upon realizing that First Union no longer had sufficient assets to pay the $5.1 million plus interest Pictet sought, Pictet amended its counterclaim to include claims for conversion and breach of fiduciary duty. On February 9, 2001, the district court issued a judgment in the appraisal action in Pictet's favor for $5.1 million. On March 15, 2002, the district court held that First Union also owed 6% interest on the money due to Pictet (Interest Rate Decision). Pictet moved for reconsideration, arguing that the court had not disposed of its breach of fiduciary duty claim. In response to the motion, First Union specifically cited § 34-523(b) of the Connecticut Statutory Trust Act (Connecticut Act) as barring Pictet from holding First Union individually liable for the alleged breach of fiduciary duty. Although the court mentioned in its Interest Rate Decision that "First Union owed a duty," in its subsequent order denying Pictet's motion for reconsideration the court stated that it would not reach Pictet's breach of fiduciary duty claim because it did not believe that First Union had been sued in its individual capacity. Following the denial of the motion for reconsideration, Pictet appealed, arguing that First Union in its individual capacity was a proper party to the action. First Union again asserted its Connecticut Act defense in its appellee's brief. We held that First Union had been individually

sued on the conversion and breach of fiduciary duty claims and remanded the case for further proceedings.[1]  Pictet I, 351 F.3d at 815.

On remand, Pictet moved for summary judgment.  In its response and renewal of its own summary judgment motion, First Union incorporated by reference its Connecticut Act defense.  The district court granted Pictet's motion for summary judgment on the breach of fiduciary duty claim (Fiduciary Duty Decision).  It held, *inter alia*, that it had already ruled that First Union owed Pictet a fiduciary duty, and that it would not reconsider its position because the existence of a fiduciary duty was the law of the case.  It further held that because First Union knew that Pictet valued its shares at $5.1 million, First Union breached its fiduciary duty by allowing disbursements that encroached upon that amount.  The decision said nothing of the Connecticut Act defense.

## II. Discussion

We review the district court's grant of summary judgment *de novo*, applying the same standards as the district court.  Schwan's IP, LLC v. Kraft Pizza Co., 460 F.3d 971, 974 (8th Cir. 2006).  We view the facts in the light most favorable to the nonmoving party and will affirm if the record demonstrates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Id. at 975.

We address on appeal two central issues: whether the law of the case doctrine requires a finding of fiduciary duty, and whether the Connecticut Act was sufficiently pled to preclude a summary judgment in the absence of additional legal determinations.  We address each in turn.

---

[1]In Pictet I, we expressly limited our decision to the issue of whether First Union had been sued in its individual or representative capacity and did not address whether First Union, in any capacity, owed a fiduciary duty to Pictet.

A. The Law of the Case

Pictet contends that the law of the case doctrine mandates a holding that First Union owed a fiduciary duty in its individual capacity. We conclude that the law of the case doctrine does not apply because the existence of the fiduciary duty was never previously established.

We have described the law of the case doctrine as providing that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Morris v. American Nat'l Can Corp., 988 F.2d 50, 52 (8th Cir. 1993) (quoting Arizona v. California, 460 U.S. 605, 618 (1983)). The underlying intent of the doctrine is to "prevent[] the relitigation of settled issues in a case, thus protecting the settled expectations of parties, ensuring uniformity of decisions, and promoting judicial efficiency." Little Earth of the United Tribes, Inc. v. United States Dep't of Hous. & Urban Dev., 807 F.2d 1433, 1441 (8th Cir. 1986). The doctrine applies to appellate decisions, see Mosley v. City of Northwoods, 415 F.3d 908, 911 (8th Cir. 2005), as well as to final decisions by the district court that have not been appealed. Little Earth, 807 F.2d at 1441 (citing In re Design Classics, Inc., 788 F.2d 1384, 1386 (8th Cir. 1986)). It does not apply to interlocutory orders, however, "for they can always be reconsidered and modified by a district court prior to entry of a final judgment." United States v. Hivley, 437 F.3d 752, 766 (8th Cir. 2006) (citing Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co., 48 F.3d 1066, 1070 (8th Cir. 1995)).

In its Fiduciary Duty Decision, the district court established First Union's fiduciary duty in part based on its determination that the law of the case doctrine applied.[2] Implicitly, this would require the district court to have already issued a final

---

[2]The district court additionally enumerated other considerations which it believed bolstered its conclusion. Even if a fiduciary duty existed, the justifying

-5-

order in which it had held that First Union owed a fiduciary duty in its individual capacity. We see no evidence of such an order in the court's Interest Rate Decision, and the district court's "postjudgment interpretation of [its prior] judgment is irrelevant to an appellate court's determination of the judgment's meaning." Kerndt v. Ronan, 458 N.W.2d 466, 471 (Neb. 1990); see also Neujahr v. Neujahr, 393 N.W.2d 47, 49 (Neb. 1986); Crofts v. Crofts, 445 P.2d 701, 702-03 (Utah 1968).

The district court's introductory remarks in its Interest Rate Decision summarized its holding and said that First Union owed a duty, but the court never mentioned the word "fiduciary," specified the capacity in which First Union may have owed the duty, or described the basis for finding the existence of such duty. Accordingly, the district court's reference to First Union's duty was irrelevant to Pictet's breach of fiduciary duty claim against First Union. Ambiguous orders are to be construed by examining the record and proceedings, the findings and opinion of the court, and the respective contentions of the parties. See Oklahoma v. Texas, 256 U.S. 70, 88 (1921). Pictet contends that the words the district court chose to use to establish the interest rate on the payments withheld indicate that a finding of fiduciary duty was subsumed within the rate selected – rendering it a necessary part of its decision rather than constituting mere dicta.[3] As indicated in Pictet I, however, "the appropriate value of Pictet's shares and the applicable interest thereon is distinct from whether First Union is liable for mismanaging or converting the proceeds from the sale of those shares . . . ." Pictet I, 351 F.3d at 816. This statement reflects our

considerations, however, did not address why the duty should extend to First Union in its individual capacity. In any event, the district court would not allow First Union to take issue with these considerations or the court's conclusion in light of the court's belief that the law of the case doctrine precluded any challenge to its earlier decision.

[3]Pictet's analysis is based on the court's statement that "although first Union owed a duty to Pictet, any damage awarded to Pictet in excess of the interest awarded would be duplicative and contrary to equitable principles." (Appellant's App. at 649).

conclusion that the district court's interest rate determination had no bearing on the potential existence of a fiduciary duty.

We did not then, nor do we now, consider the duty the court found tangentially relevant to the interest rate determination to be related to the fiduciary duty presently relevant to Pictet's claim.[4]   In the in-depth discussion following the court's introductory summary of its Interest Rate Decision, the court abandoned the duty language altogether – replacing it instead with a discussion centered predominately on First Union's unjustifiable payment delays. (Appellant's App. at 654-56). Nothing in the Interest Rate Decision's treatment of its interest rate determination begins to approach in detail the fiduciary duty considerations and findings that the district court's Fiduciary Duty Decision alludes to as having been previously weighed and decided.   Even though First Union had argued in the pre-Interest Rate Decision proceeding that it did not owe Pictet a fiduciary duty, and even though the court expressed a readiness to resolve all issues with finality, the district court addressed the breach of fiduciary duty claim by effectively dismissing it as moot.  See Pictet I, 351 F.3d at 813.  Even had the district court intended to resolve the fiduciary duty issue in its Interest Rate Decision, it failed to do so with sufficient directness and clarity to establish the settled expectations of the parties necessary for the subsequent application of the law of the case doctrine.  Accordingly, we conclude that the law of the case doctrine cannot apply and that the Interest Rate Decision requires neither the district court, nor us, to find that a fiduciary duty existed.

---

[4]Instead, we interpret the court's March 15 language as referring to a general duty to pay the money owed under the statute in a timely fashion.  In any case, the duty mentioned by the court only applied to First Union in its representative capacity because the district court did not believe itself to have jurisdiction over First Union individually when it issued its Interest Rate Decision.

## B. The Connecticut Act Defense

We next turn to the relevance of the Connecticut Act defense to the case. There are two issues relevant to our inquiry: whether the Connecticut Act represents an affirmative defense, and, if so, whether the affirmative defense was inadequately pled and therefore waived. We conclude that the Connecticut Act is an affirmative defense under Arkansas law, and we consider it constructively pled and not waived.

The Connecticut Act states in relevant part:

> (b) Except to the extent otherwise provided in the governing instrument of a statutory trust, a trustee, when acting in such capacity, shall not be personally liable to any person other than the statutory trust or a beneficial owner for any act, omission or obligation of the statutory trust or any trustee thereof.

C.G.S.A. § 34-523.

We believe that the Connecticut Act represents an affirmative defense under Arkansas law. Whether the Connecticut Act is an affirmative defense is a question of Arkansas state law. Cf. Troxler v. Owens-Illinois Inc., 717 F.2d 530, 532 (11th Cir. 1983); Williams v. Jader Fuel Co., 944 F.2d 1388, 1400 (7th Cir. 1991) ("In a diversity case, the legal and factual sufficiency of an affirmative defense is examined with reference to state law."). First Union asserts that the Connecticut Act is not an affirmative defense because the Act restricts the duties owed to all but those specified, and therefore does not simply limit recovery. This argument echoes our holding that "[when] the defense involved is one that merely negates an element of the plaintiff's prima facie case . . . it is not truly an affirmative defense and need not be pleaded despite rule 8(c)." Masuen v. E.L. Lien & Sons, Inc., 714 F.2d 55, 57 (8th Cir. 1983) (per curiam) (quoting Sanden v. Mayo Clinic, 495 F.2d 221, 224 (8th Cir. 1974)). Nevertheless, the statutory language of the relevant Connecticut Act section is entirely silent as to whom a trustee may owe duties. It does not preclude other sources of law

from imposing duties on the trustee, and therefore does not negate an essential element of Pictet's prima facie case.  Instead it limits the population of individuals to whom a trustee may be individually liable irrespective of those to whom the trustee owes duties.  Although we have not found an Arkansas case directly on point, the Arkansas Supreme Court has previously held that statutory exemptions must be affirmatively pled as affirmative defenses.  See Marine Servs. Unlimited, Inc. v. Rakes, 918 S.W.2d 132, 136 (Ark. 1996).  In light of the statute's silence as to duties, we consider the liability-limiting language of the Connecticut Act sufficiently analogous to a statutory exemption from Arkansas law.  Accordingly, we believe the Act represents an "avoidance or affirmative defense" within the meaning of Ark. R. Civ. P. 8(c).

We turn, then, to the question whether the affirmative defense provided by the Act has been waived.  Generally, failure to plead an affirmative defense results in a waiver of that defense.  Fed. R. Civ. P. 8(c); see also Jacobs Mfg. Co. v. Sam Brown Co., 19 F.3d 1259, 1266 (8th Cir. 1994) (applying Missouri law); Bissett v. Burlington N. R.R. Co., 969 F.2d 727, 731 (8th Cir. 1992); Piekarski v. Home Owners Sav. Bank, F.S.B., 956 F.2d 1484, 1489 (8th Cir. 1992) (applying the Minnesota rules of procedure).  The Supreme Court has indicated that the Rule 8(c) pleading requirement is intended to give the opposing party both notice of the affirmative defense and an opportunity to rebut it.  Grant v. Preferred Research, Inc., 885 F.2d 795, 797-98 (11th Cir. 1989) (citing Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 350 (1971)).  We have, therefore, eschewed a literal interpretation of the Rule that places form over substance, Thomas v. St. Luke's Health Sys., Inc., 869 F. Supp. 1413, 1428-29 (N.D. Iowa, 1994), aff'd per curiam, 61 F.3d 908 (8th Cir. 1995) (unpublished table decision), and instead have held that "[w]hen an affirmative defense 'is raised in the trial court in a manner that does not result in unfair surprise, . . . technical failure to comply with Rule 8(c) is not fatal.'"  Financial Timing Publ'ns,

Inc. v. Compugraphic Corp., 893 F.2d 936, 944 n.9 (8th Cir. 1990) (quoting Allied Chem. Corp. v. Mackay, 695 F.2d 854, 855 (5th Cir. 1983)).[5]

Pictet has not shown that he would be unfairly surprised or prejudiced by inclusion of the defense and so we construe First Union's assertions of the affirmative defense as constructively amending its pleadings. First Union twice informed Pictet of its intent to use the Connecticut Act as a defense against Pictet's breach of fiduciary duty claim prior to Pictet's motion for summary judgment that prompted the Fiduciary Duty Decision. It did so first in its April 2, 2002 response to Pictet's motion for reconsideration following the district court's Interest Rate Decision and then in its subsequent appellee's brief filed in this court in Pictet I. In these filings, First Union not only specified and paraphrased the relevant code sections but also described why they precluded individual liability for Pictet's claim. Pictet demonstrated its awareness of the defense by addressing it in its reply brief in Pictet I.[6] Yet even had Pictet not previously acknowledged the defense, First Union's filings alone would still have afforded Pictet notice sufficient to undermine any claim of surprise over First Union's incorporation of the defense in its response to Pictet's summary judgment motion in the pre-Fiduciary Duty Decision proceedings. Indeed, by the time it renewed its own summary judgment motion after our remand in Pictet I, Pictet had

_____

[5]Consequently, where the circumstances merit it, we have accepted and favorably cited affirmative defenses first raised at various stages of litigation. See, e.g., Sanders v. Dep't of the Army, 981 F.2d 990, 991 (8th Cir. 1992) (per curiam) (finding that the district court did not abuse its discretion by allowing an affirmative defense to be raised for the first time in a motion to dismiss); Stoebner v. Parry, Murray, Ward & Moxley, 91 F.3d 1091, 1093-94 (8th Cir. 1996) (per curiam) (citing favorably a 9th Circuit opinion allowing an affirmative defense to be raised for the first time in a summary judgment motion when there is no prejudice); Coohey v. United States, 172 F.3d 1060, 1064 n.8 (8th Cir. 1999) (recognizing that "an affirmative defense can even be raised on appeal where the evidence supports that defense.").

[6]Pictet addressed the defense by inaccurately arguing there that it should be ignored because it had never been raised prior to appeal.

known of the Connecticut Act defense for over a year – certainly a long enough period to preclude a claim of surprise. See, e.g., Grant, 885 F.2d at 797-98 (finding one month notice sufficient to preclude unfair surprise); Ball Corp. v. Xidex Corp., 967 F.2d 1440, 1443-44 (10th Cir. 1992) (describing the 10th Circuit's common law rule stating that inadequately plead affirmative defenses may still be proven at trial if notice of intent to raise the defense was provided at least three months prior to trial).

Nor can Pictet credibly claim prejudice. All facts relevant to the defense are already on the record and not in dispute. Pictet knew of the defense for some time and even acknowledged First Union's attempt to raise it. Finally, Pictet had an opportunity to respond to the defense subsequent to learning of it. Nothing prevented Pictet from responding to the defense after our remand in Pictet I. We have affirmed decisions recognizing a constructive amendment in similar circumstances where affirmative defenses have been raised other than in a responsive pleading, see, e.g., Thomas v. St. Luke's Health Sys., Inc., 849 F. Supp. 1413, 1428-29 (N.D. Iowa), aff'd per curiam, 61 F.3d 908 (8th Cir. 1995) (unpublished table decision), and likewise here construe First Union's multiple assertions of the Connecticut Act in its prior summary judgment and appellate filings as pleading the affirmative defense.[7] See also

---

[7]We recognize that in at least one of our sister circuits, "[p]ost-verdict or [post]-judgment amendments are occasionally allowed, but where they may substantially prejudice the other party or are merely the result of a long and unreasonable delay, particularly if the movant was aware of the facts upon which the amendment is predicated and could have raised the matter before judgment, such amendments properly may be denied." Trinity Carton Co. v. Falstaff Brewing Corp., 767 F.2d 184, 194 (5th Cir. 1985). Even were we to consider First Union's answer amended after the district court's initial decision effectively declaring Pictet's claim moot, we would not consider Pictet prejudiced. The district court's initial decision had not dealt with the claim on its merits. Therefore, Pictet did not suffer prejudice resulting from the delay because, by effectively declaring the issue moot and not deciding it at that time, even had First Union amended its answer earlier, the district court would still not have addressed either party's substantive arguments on the merits until after our subsequent

-11-

<u>Pantzer v. Shields Dev. Co.</u>, 660 F. Supp. 56 (D.C. Del. 1986) (deeming a seller's answer amended to include the affirmative defense of the statute of frauds, despite the seller's failure to raise that defense in its answer, because the seller raised the defense pretrial in a summary judgment motion, and the buyer had fair notice of the defense, responded to it in the answering brief, and suffered no prejudice, since the facts underlying the statute of frauds inquiry were not disputed).

We express no opinion regarding the effect of the Connecticut Act defense on Pictet's breach of fiduciary duty claim. <u>Cf.</u> <u>Occhino v. United States</u>, 686 F.2d 1302, 1311 (8th Cir. 1982) ("[I]t is not appropriate that this court decide de novo issues presented to but not decided by the district court."); <u>Mark v. Nix</u>, 983 F.2d 138, 140 (8th Cir. 1993) ("We generally do not consider an issue not decided by the district court, particularly when the outcome is debatable and our refusal will not otherwise produce a plain miscarriage of justice."). Likewise, because the question whether First Union owed a fiduciary duty in its individual capacity to Pictet may be rendered moot depending on how the district court resolves the Connecticut Act's effect on the claim, and because our law of the case holding leaves the matter open for further argument and consideration, we consider it premature at this time for us to decide whether the fiduciary duty at issue exists. Instead, we expect the final resolution of the issue to be premised entirely on the district court's legal determinations informed by the fully presented legal argument of the parties. Accordingly, as there remain questions of law that the district court must resolve before ruling on the motion for summary judgment, we reverse the district court's summary judgment and remand the case for further proceedings consistent with this opinion.

_____

remand. We do consider the pleadings constructively amended prior to the Fiduciary Duty Decision.