# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 07-2890

———————

Gander Mountain Company,              *
                                      *
              Appellee,               *
                                      *   Appeal from the United States
        v.                            *   District Court for the
                                      *   District of Minnesota.
Cabela's, Inc.,                       *
                                      *
              Appellant.              *

———————

Submitted: May 12, 2008
    Filed: August 27, 2008

———————

Before WOLLMAN, MURPHY, and SMITH, Circuit Judges.

———————

WOLLMAN, Circuit Judge.

This case arose from a contract dispute involving a 1996 transaction between Gander Mountain Co.[1] and Cabela's, Inc. Gander Mountain filed suit against Cabela's seeking a declaration that a particular provision of the agreement, the Contingent Trademark License provision ("CTL"), was unenforceable. Cabela's counterclaimed, seeking a declaration that the provision was enforceable and requesting an injunction prohibiting Gander Mountain from using its trademarks or confusingly similar marks

———————

[1]The 1996 transaction was actually entered into by a predecessor of Gander Mountain, but for the sake of simplicity, we will follow the district court's model and refer to Gander Mountain and its predecessor collectively as "Gander Mountain."

in its direct marketing business.  Concluding that the provision in question was unenforceable because it was merely an agreement to agree, the district court[2] granted Gander Mountain's motion for summary judgment on the counterclaim.[3]  Cabela's appeals, arguing that the district court violated the law-of-the-case doctrine and erred in granting summary judgment in favor of Gander Mountain.  We affirm.

## I.  Background

Both Gander Mountain and Cabela's are in the business of selling outdoor recreational, sports, and hunting equipment.  Until 1996, Gander Mountain sold its products through retail stores and through direct marketing using mail-order catalogs.  In 1996, experiencing financial difficulties and facing the prospect of filing for bankruptcy, Gander Mountain sold its catalog division and exclusive rights to certain Gander Mountain trademarks to Cabela's for $35,000,000.  Pursuant to the transaction, Cabela's purchased all of the assets of Gander Mountain's catalog division, and Gander Mountain agreed not to compete with Cabela's in the direct marketing business for seven years. Cabela's also purchased a four-year license to use Gander Mountain's trademarks in its direct marketing business, agreeing not to actually use the trademarks but to exercise its rights under the license to prevent others from using the trademarks in direct marketing.  The noncompetition agreement also contained the CTL provision, which states:

> In the event Gander Mountain is engaged in active steps to reenter the Direct Marketing Business after the expiration of the seven-year noncompetition period . . . then Gander Mountain shall notify Cabela's in writing and Cabela's shall have the right to purchase from Gander

---

[2]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

[3]Gander Mountain's complaint was dismissed in August 2005, leaving Cabela's counterclaim as the only issue remaining in the case.

Mountain for the sum of $1,000 a perpetual, exclusive license free and clear of all Liens to use the Trademarks in connection with [Cabela's] Direct Marketing Business . . . . Such license shall be evidenced by a separate written agreement in form and content customary to licenses of the type described above. . . .

After the seven-year noncompetition period expired, Gander Mountain gave Cabela's written notice that it intended to reenter the direct marketing business. Cabela's tendered $1,000 to Gander Mountain and presented a draft license agreement, referred to by the parties as the Highby Agreement. Gander Mountain refused to sign the Highby Agreement, contending that the CTL is unenforceable under Wisconsin law, and brought the above-described action.

The parties dispute the meaning of the language in the CTL that gives Cabela's the right to a license that is to be "evidenced by a separate written agreement in the form and content customary to licenses of the type described above." Cabela's has argued throughout the litigation that the terms of the license agreement can be determined by the license agreed to in the 1996 transaction, which it asserts is what the parties intended by "in the form and content customary to licenses of the type described above."

One of the interrogatories submitted by Gander Mountain to Cabela's during discovery requested an explanation of the "customary form and content of licenses" contemplated by the CTL provision. Cabela's response was that the license created in the 1996 transaction was the only example that was needed, pointing to the Highby Agreement that it had previously drafted and tendered to Gander Mountain. In denying Gander Mountain's motion to compel further response, the magistrate judge[4] concluded that Cabela's response was sufficient. Upon later review, the district court

---

[4]The Honorable Raymond L. Erickson, United States Magistrate Judge for the District of Minnesota.

held that the magistrate judge's determination was not clearly erroneous or contrary to law and affirmed the order without comment.

Thereafter, Gander Mountain filed a second motion to compel further responses to its interrogatories. Cabela's filed for protective orders, and the issue was again brought before the magistrate judge. Concluding that the issue appeared to duplicate that which was covered in its prior order, which had concluded that the issue was not within the scope of further discovery, the magistrate judge denied the motion.

Gander Mountain contends that the language in the CTL does not provide definite terms and that the 1996 transaction is not sufficient to supply the necessary terms because a single example of a nonperpetual license agreement cannot be determinative of the customary form or content of a perpetual license agreement. After hearing oral argument, the district court agreed with Gander Mountain and held that the CTL was merely an unenforceable agreement to agree because there was no evidence in the record to illustrate the "form and content customary to perpetual, exclusive trademark licenses generally." See Gander Mountain Co. v. Cabela's, Inc., No. 04-CV-3125, 2007 WL 2026751 (D. Minn. July 10, 2007) (order granting Gander Mountain's motion for summary judgment).

## II. Discussion

Cabela's seeks a reversal of the district court's grant of summary judgment, a remand to the district court with directions to re-open for additional fact and expert discovery, and/or the grant of summary judgment for Cabela's.

## A. Law-of-the-Case Doctrine

We begin by addressing Cabela's argument that the district court violated the law-of-the-case doctrine by granting Gander Mountain's motion for summary judgment without allowing Cabela's an opportunity to conduct discovery that it had previously declined to conduct.

The law-of-the-case doctrine has been described as a means to prevent the relitigation of a settled issue in a case. United States v. Bartsh, 69 F.3d 864, 866 (8th Cir. 1995). The doctrine "requires courts to adhere to decisions made in earlier proceedings in order to ensure uniformity of decisions, protect the expectations of the parties, and promote judicial economy." Id. In other words, the doctrine "'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" United States v. Carter, 490 F.3d 641, 644 (8th Cir. 2007) (quoting Arizona v. California, 460 U.S. 605, 618 (1983)). The doctrine applies to decisions made by appellate courts and final decisions made by district courts that have not been appealed. First Union Nat'l Bank v. Pictet Overseas Trust Corp., Ltd., 477 F.3d 616, 620 (8th Cir. 2007). The doctrine does not apply to interlocutory orders. Id. ("interlocutory orders . . . can always be reconsidered and modified by a district court prior to entry of a final judgment").

We conclude that the district court did not violate the law-of-the-case doctrine. Its grant of summary judgment was based upon the legal determination that the contract language, "in form and content customary to licenses of the type described above," did not refer only to the 1996 license between the parties but also to licenses "in form and content customary to perpetual, exclusive trademark licenses generally." The district court did not issue a final order on this legal determination prior to entering summary judgment. A district court's comments during oral argument do not constitute a final order subject to the law-of-the-case doctrine. See First Union Nat'l Bank, 477 F.3d at 620 (the law-of-the-case doctrine applies only to final orders); In

re Adelphia Commc'ns Corp., 336 B.R. 610, 636 n.44 (Bankr. S.D. N.Y. 2006) ("Thoughts voiced by judges in oral argument do not always find their way into final decisions, often intentionally and for good reason."). Additionally, the prior discovery rulings were not decisions on the merits of Gander Mountain's argument that the "form and content customary to licenses" could not be determined solely by the 1996 agreement. See FirsTier Mortgage Co. v. Investors Mortgage Ins. Co., 498 U.S. 269, 276 (1991) (noting that a discovery ruling is "clearly" an interlocutory decision); United States v. Raddatz, 447 U.S. 667, 673 (1980) (citing 28 U.S.C. § 636(b)(1), and noting that a magistrate judge cannot make a final and binding decision on dispositive motions); see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 897 (1990) ("A litigant is never justified in assuming that the court has made up its mind until the court expresses itself to that effect, and a litigant's failure to buttress its position because of confidence in the strength of that position is always indulged in at the litigant's own risk.").

The fact that Cabela's was not compelled by the district court to produce certain evidence did not make the evidence inadmissible for purposes of establishing a genuine issue of material fact. At no time did the magistrate judge or the district court determine that evidence of perpetual trademark licenses generally was inadmissible. Accordingly, the discovery rulings did not require the district court to conclude on the motions for summary judgment that Cabela's interpretation was correct as a matter of law, and Cabela's was not entitled to rely upon the prior discovery rulings as a way to ignore Gander Mountain's substantive argument on the merits of the case.

## B. Summary Judgment

"Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to a judgment as a matter of law." Bearden v. Int'l Paper Co., 529 F.3d 828, 831 (8th Cir. 2008) (citing Fed. R. Civ. P. 56(c)). We review *de novo* the district court's grant of summary judgment, viewing the evidence

in the light most favorable to the nonmoving party. Id. at 831. "In ruling on a motion for summary judgment a court must not weigh evidence or make credibility determinations." Kenney v. Swift Transp., Inc., 347 F.3d 1041, 1044 (8th Cir. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). "[A] properly supported motion for summary judgment is not defeated by self-serving affidavits." Conolly v. Clark, 457 F.3d 872, 876 (8th Cir. 2006) (citing Davidson & Assocs. v. Jung, 422 F.3d 630, 638 (8th Cir. 2005) for the proposition that to avoid summary judgment, the nonmoving party must submit more than unsupported self-serving allegations; the nonmoving party must provide sufficient probative evidence to allow the nonmoving party to prevail).

Contract interpretation as well as the interpretation of an unambiguous contract is a question of law. Richie Co., LLP v. Lyndon Ins. Group, Inc., 316 F.3d 758, 760 (8th Cir. 2003). In this diversity case, the parties agree that Wisconsin law applies. Under Wisconsin law, an agreement to agree does not create a binding obligation. Skycom Corp. v. Telstar Corp., 813 F.2d 810, 814 (7th Cir. 1987) (citing Witt v. Realist, Inc., 118 N.W.2d 85, 93-94 (Wis. 1962)). "To be enforceable a contract must be definite and certain as to its basic terms and requirements. It must spell out the essential commitments and the obligations of each party with reasonable certainty." Witt, 118 N.W.2d at 93.

Cabela's argues that the district court improperly relied on Cabela's failure to produce evidence regarding customary terms of perpetual trademark licenses generally and ignored Cabela's expert testimony that the Highby Agreement was consistent with the form and content contemplated by the CTL. Cabela's also asserts that, even if the district court ignored Cabela's evidence, Gander Mountain's expert testimony was that there are many terms customary to trademark license agreements. Thus, Cabela's argues, the issue of fact that exists and which should be resolved at trial is whether the four-year trademark license agreement entered into in 1996 and/or the Highby Agreement contained any of the terms that Gander Mountain's expert described as

customary and whether those terms were in the form and content customary of trademark license agreements.

For the same reasons discussed above, we conclude that the district court's discovery rulings did not excuse Cabela's from refuting Gander Mountain's argument on the merits. Cabela's failure to produce evidence regarding the customary content of perpetual trademark licenses generally resulted in its failure to meet its burden of identifying a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (citing Rule 56(e) of the Federal Rules of Civil Procedure and noting that a party opposing summary judgment must go beyond the pleadings and submit affidavits, depositions, answers to interrogatories, or admissions on file and designate specific facts identifying the genuine issue of material fact that should go to trial). Cabela's expert's conclusion that the Highby Agreement "is in the form and content customary to licenses of the type described in [the CTL]" was not based upon an analysis of the form and content customary to perpetual, exclusive trademark licenses generally. Accordingly, the expert's report did not constitute evidence that the CTL stipulated sufficient material terms to form an enforceable contract, nor did it provide a method of determining the material terms without further negotiation between the parties.

Furthermore, although Gander Mountain's expert stated that there are provisions that are customarily included in trademark license agreements, the expert noted that the specific terms or content of those provisions must be negotiated and that the content of the Highby Agreement was not customary for perpetual trademark licences. Specifically, Gander Mountain's expert noted that he had never seen a trademark license agreement in which the licensee "covenants and agrees not to use the license . . . . for any purpose except to protect against and prevent the use of the Trademarks . . ." Rather, a trademark license agreement is customarily entered into to allow the licensee to use the trademarks, with the licensee paying royalties to the licensor for use of the trademarks. This concept is supported by the CTL itself, which

provides Cabela's with "the right to purchase . . . a perpetual, exclusive license . . . to use the Trademarks in connection with its Direct Marketing Business." This provision, allowing Cabela's *to use* the trademarks, is different from the Highby Agreement, which would prevent Gander Mountain from using its trademarks to compete with Cabela's in the direct marketing business. Thus, the only evidence in the record concerning the content customary for perpetual trademark licenses generally indicates that neither the license agreed upon in 1996 nor the Highby Agreement was in the form and content customary for perpetual trademark licenses generally. As a result, there is no evidence in the record regarding how the missing terms of the license agreement would be determined without the parties being required to conduct further negotiations.

Thus, there are no genuine issues of material fact and the district court was left to apply Wisconsin law to the facts of this case. Cabela's does not argue that the district court's conclusion that the text of the CTL created an agreement to agree was an erroneous application of Wisconsin law. Rather, Cabela's rests its arguments on factors other than the text of the CTL and contends that the district court failed to uphold the parties' intent, which was to be bound by the CTL. The parties' intent in 1996 to create a trademark license agreement several years in the future upon the happening of certain events does not overcome the fact that they did not agree to sufficient specific terms nor on how to determine sufficient specific terms to render the CTL an enforceable provision. See Kernz v. J.L. French Corp., 667 N.W.2d 751, 758 (Wis. Ct. App. 2003) ("'It must be borne in mind that the office of judicial construction is not to make contracts or to reform them, but to determine what the parties contracted to do; not necessarily what they intended to agree to, but what, in a legal sense, they did agree to, as evidenced by the language they saw fit to use.'" (quoting Marion v. Orson's Camera Ctrs., Inc., 138 N.W.2d 733, 736-37 (Wis. 1966))). At the very least, one of the material terms left open for negotiation by the CTL is the amount of royalties Cabela's would pay to Gander Mountain for the use of the trademarks.

Cabela's characterization of the CTL as a promise by Gander Mountain never to use its own trademarks again in the direct marketing business is belied by the CTL's failure to express such an unconditional promise by Gander Mountain. Rather, we agree with the district court's conclusion that the text created an agreement that the parties would negotiate a license agreement in the form and content customary to perpetual trademark license agreements generally. The parties may have used the 1996 agreement for guidance, but had they intended that the perpetual trademark license mirror the 1996 agreement exactly, the CTL would have stated as much. Thus, we conclude that the district court did not err when it concluded that the parties had entered into nothing more than an agreement to agree, one that is unenforceable under Wisconsin law.

The judgment is affirmed.

_____