# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT
_____

No. 07-1866
_____

Little Rock School District,                    *
                                                *
          Plaintiff/Appellee,                   *
                                                *
Lorene Joshua, Leslie Joshua, Stacy             *
Joshua, Wayne Joshua,                           *
                                                *
          Intervenor Plaintiffs/               *
          Appellants,                           *
                                                *   Appeal from the United States
          v.                                    *   District Court for the
                                                *   Eastern District of Arkansas.
North Little Rock School District;              *
Pulaski County Special School District;         *
State of Arkansas,                              *
                                                *
          Defendants.                           *
   _____                  *
                                                *
Dale Charles; Robert L. Brown, Sr.;             *
Gwen Hevey Jackson; Diane Davis;                *
Raymond Frazier,                                *
                                                *
          Plaintiffs,                           *
                                                *
          v.                                    *
                                                *
Pulaski County Board of Education;              *
Patricia Gee, Individually and in her           *
Official Capacity as a Member of the            *
Board of Education of the Little Rock           *
School District, A Public Body; George          *

Cannon, Dr. Individually and in his   *
Official Capacity as a Member of the   *
Board of Education of the Little Rock   *
School District, A Public Body;   *
Katherine Mitchell, Dr., Individually   *
and in her Official Capacity as a   *
Member of the Board of Education of   *
the Little Rock School District, A Public *
Body; W. D. Hamilton, Individually and *
in his Official Capacity as a Member of   *
the Board of Education of the Little   *
Rock School District, A Public Body,   *
also known as Bill Hamilton; Cecil   *
Bailey, Individually and in his Official   *
Capacity as a Member of the Pulaski   *
County Board of Education, a Public   *
Corporate; Thomas Broughton,   *
Individually and in his Official Capacity *
as a member of the Pulaski County   *
Board of Education, a Public Corporate; *
Martin Zoldessy, Dr., Individually and   *
in his Official Capacity as a member of   *
the Pulaski County Board of Education,   *
a Public Corporate,   *
  *
        Defendants.   *
_____   *
  *
State of Arkansas,   *
  *
        Amicus on Behalf of   *
        Appellee.   *

_____

Submitted: March 13, 2008
Filed: April 2, 2009
_____

Before WOLLMAN, MELLOY, and GRUENDER, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

This case is once again before us, this time by way of an appeal by the intervenor plaintiffs (Joshua) from the district court's[1] order declaring the Little Rock School District (LRSD) unitary. Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1, 2007 WL 624054 (E.D. Ark. 2007) (hereinafter referred to as LRSD III). We affirm.

I.

On September 13, 2002, the district court granted LRSD partial unitary status. Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist., 237 F. Supp. 2d 988, 1077 (E.D. Ark. 2002). That order required LRSD to assess and evaluate the key programs set forth in § 2.7 of the Revised Desegregation and Education Plan (Revised Plan) that the district court had approved in 1998.

On June 30, 2004, the district court entered an order denying LRSD's request for a declaration of unitary status. Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1, 470 F. Supp. 2d 963 (E.D. Ark. 2004).

We affirmed that decision in Little Rock School District v. North Little Rock, School District, 451 F.3d 528 (8th Cir. 2006). In recounting the lengthy history of this case, id. at 529, we questioned what we perceived to be the additional requirements that the district court had imposed in its 2002 Compliance Order, id. at 536, and what we characterized as the even more heightened requirements imposed by the district

_____

[1]The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

court in its 2004 order, the details of which we set forth at some length. Id. at 536-40.[2] Despite our concerns, we concluded that the district court had not clearly erred in finding that LRSD had failed to demonstrate substantial compliance with the Revised Plan. Id. at 540. In the course of our opinion, we commented on how this litigation had been complicated by the shifting terminology employed by the parties and the district court, especially with respect to the terms "assessment" and "evaluation" as used in determining whether LRSD had satisfied the requirements of § 2.7.1 of the Revised Plan. Id. at 531. We concluded our analysis by saying that in light of LRSD's representation that it was complying with the new compliance remedy,

> [w]e are unwilling at this time to say that those heightened requirements surpass beyond all measure the requirements to which LRSD committed itself when it entered into the 1989 Settlement. Suffice it to say that there will be time enough for us to revisit the requirements of the 2004 order if this case should once again come before us.

Id. at 540.

Although concurring in our affirmance of the district court's finding that LRSD had not substantially complied with § 2.7.1 of the Revised Plan as embodied in the 2002 Remedy, Judge Gruender dissented from our judgment because of his belief that the district court had abused its discretion in imposing the 2004 Remedy. Id. at 541 (Gruender, J., concurring in part and dissenting in part).

---

[2]For a thorough, thought-provoking account of the history of the efforts to integrate the schools within the City of Little Rock and Pulaski County, Arkansas, see Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1, 584 F. Supp. 328 (E.D. Ark. 1984) (Woods, J.). For the history of the litigation that ultimately resulted in the lawsuit that is before us today, see Little Rock Sch. Dist. v. Pulaski County Sch. Dist. No. 1, 778 F.2d 404 (8th Cir. 1985) (en banc).

Specifically, Judge Gruender concluded that the district court had abused its discretion in substituting "a new set of rigorous evaluations not agreed to by the parties," id. at 542, in ordering a new team for LRSD's Program Review and Evaluation Department, and in introducing the requirement that LRSD's "program assessment process must be *deeply embedded* as a permanent part of LRSD's curriculum and instruction program." Id. (quoting the district court's 2004 order). Judge Gruender characterized the "deeply embedded" requirement as being "impossibly subjective" and as having been "created out of whole cloth." Id. at 543. He would have supplanted that standard by requiring the district court on remand to analyze the evaluations called for by the 2004 Remedy under the standards set forth in the 2002 Remedy. Id.

II.

On remand from our 2006 decision, the district court conducted a three-day evidentiary status hearing in January 2007. LRSD called fifteen witnesses, who testified about LRSD's substantial compliance with § 2.7.1 of the Revised Plan. Joshua called nineteen witnesses, who testified that LRSD needed to do more still in order to comply with its obligations. As noted by the district court, the parties introduced into evidence thousands of pages of exhibits.

Before reaching the merits of the question whether LRSD had substantially complied with the requirements of § 2.7.1, the district court explained at some length how it believed both the majority and the dissent in our 2006 decision had "erroneously construed § 2.7.1 as requiring LRSD to perform program only assessments–not evaluation–of the § 2.7 programs." LRSD III, 2007 WL 624054, at *6, n.38. The district court disagreed with our suggestion that this litigation had been complicated by what we characterized as the shifting terminology used by the parties and the district court with respect to "assessment," "evaluation," and other terms. Id. at *6.

In contrast to its disagreement with our characterization of what its earlier orders had required, the district court agreed with Judge Gruender's conclusion that the requirement that LRSD deeply embed its program assessment process as a part of its curriculum and instruction program imposed a new contractual obligation that was not contained in § 2.7.1 of the Revised Plan, saying, "Upon mature reflection, I wholeheartedly agree with the dissent's criticism of my decision to require LRSD to 'deeply embed' the program assessment process as a permanent part of its curriculum and instruction program." Id. at *7. The district court then acknowledged that it should have adopted the "good faith" compliance standard imposed under § 2.1 rather than crafting a "deeply embedded" compliance standard out of whole cloth:

> The language I should have used in section B, rather than the "deeply embedded" standard, is as follows: LRSD must act in good faith (as explicitly required by § 2.1 of the Revised Plan) to implement the program assessment process required by § 2.7.1 of the Revised Plan. In the Findings of Fact, I will use this "good faith" compliance standard to determine whether LRSD has substantially complied with section B of the 2004 Compliance Remedy, rather than the "deeply embedded" compliance standard contained in the June 2004 Decision.

Id. at *8 (footnote omitted).

The district court conducted a painstaking review of the evidence and testimony submitted at the January 2007 unitary status hearing and then entered detailed findings that LRSD had substantially complied with each of the requirements set forth in the 2004 Compliance Remedy and all of the obligations contained in the Revised Plan. Accordingly, the district court ordered that LRSD be declared completely unitary in all respects of its operations and released it from all further supervision and monitoring from the court, the Office of Desegregation Monitoring, and Joshua.

III.

A.

We conclude that there is no need for us to engage in a lengthy, detailed recounting of the evidence submitted at the January 2007 unitary status hearing. Suffice it to say that, having carefully reviewed the testimony and evidence presented by the witnesses for both parties, we are in complete agreement with the district court's analysis of that testimony and evidence and conclude that the district court did not clearly err in finding that LRSD had substantially complied with all of the obligations imposed upon it by the 2004 Compliance Remedy and the Revised Plan. During the course of our review, we found ourselves in agreement with the district court's observations, as set forth in greater detail below, that Joshua failed to present any evidence in support of its challenges to the sufficiency of LRSD's compliance with several of the requirements of the 2004 Compliance Remedy.

B.

There remains for decision Joshua's contention that by receding from the "deeply embedded" program assessment requirement that it imposed in its 2004 compliance remedy, the district court departed from the law of the case established in that order and affirmed by our 2006 decision. Joshua complains that it was never given notice or an opportunity to contest the changed compliance standard.

As we recently observed,

> The law-of-the case doctrine has been described as a means to prevent the relitigation of a settled issue in a case. United States v. Bartsh, 69 F.3d 864, 866 (8th Cir. 1995). The doctrine "requires courts to adhere to decisions made in earlier proceedings in order to ensure uniformity of decisions, protect the expectations of the parties, and

promote judicial economy." <u>Id.</u> In other words, the doctrine "'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" <u>United States v. Carter</u>, 490 F.3d 641, 644 (8th Cir. 2007) (quoting <u>Arizona v. California</u>, 460 U.S. 605, 618, 103 S. Ct. 1382, 75 L.Ed.2d 318 (1983)).

<u>Gander Mountain Co. v. Cabela's, Inc.</u>, 540 F.3d 827, 830 (8th Cir. 2008). <u>See also</u> <u>First Union Nat. Bank v. Pictet Overseas Trust</u>, 477 F.3d 616, 620 (8th Cir. 2007).

We conclude that the doctrine is inapplicable in the context of this litigation. First, far from constituting a ringing endorsement and affirmance of the "deeply embedded" requirement imposed by the district court's 2004 order, our 2006 decision was at most a reluctant, tepid, grudging recognition of the fact that the district court had seen fit in the context of its continuing oversight of the 1998 Remedy to make even clearer to LRSD the importance of taking steps to ensure that the key requirements of § 2.7.1 would be complied with. Our 2006 decision was not a clear holding that the "deeply embedded" requirement was an immutable standard that LRSD was required to satisfy. Our decision to reserve the right to revisit the requirements of the 2004 order if the case should once again come before us was a clear indication that the "deeply embedded" requirement was neither a settled matter nor our final word on the issue.

This lawsuit has been before the district court (in the person of at least three different district judges) for more than a quarter of a century. Judge Wilson has had supervisory authority over the case for more than five years. He has conducted numerous hearings and has entered lengthy orders regarding the elements of the remedial plan that LRSD has been obligated to comply with. It is the continuing nature of the district court's ongoing supervision that distinguishes this case from litigation between private parties that typically involves discrete, temporally fixed issues of fact and law. We believe that what the Supreme Court said in <u>Arizona v.</u>

California illustrates why rigid adherence to law-of-the-case principles is not warranted in the case before us:

> [L]aw of the case doctrine was understandably crafted with the course of ordinary litigation in mind. Such litigation proceeds through preliminary stages, generally matures at trial, and produces a judgment, to which, after appeal, the binding finality of res judicata and collateral estoppel will attach.

460 U.S. 605, 618-19 (1983).

To extrapolate and superimpose wholesale law of the case doctrine onto the district court's authority to oversee and enforce a complex, highly detailed settlement agreement that attempts to remediate more than a century of segregated educational facilities "would weaken to an intolerable extent" the district court's ability to exercise its equitable powers to accomplish the duty with which it was charged to ensure that that remedial plan is being complied with. Id. at 619. In light of the district court's ongoing supervision of the case, we believe that none of the parties to this litigation could have had the same settled expectations regarding the manner and detail in which the district court was to monitor and enforce the orders it had entered that parties in typical private litigation may well have had.

In addition, we believe that the district court's careful review of the evidence submitted at the January 2007 hearing reflected what in effect was the functional equivalent of a finding that the "deeply embedded" requirement had been satisfied. For example, after reviewing the testimony of certain of LRSD's witnesses, the district court observed:

> Dr. Roberts, Dr. Williams, and Mr. Kurrus all testified at length about why they believed LRSD had "deeply embedded" the comprehensive program assessment process in Regulation IL-R as a

permanent part of its curriculum. I have already explained why I should not have used such a subjective standard to determine whether LRSD had met its compliance obligations. Nevertheless, after hearing everything that has been done to make the comprehensive program assessment process a permanent part of LRSD's curriculum, as explained by Drs. Roberts, Williams, and Mr. Kurrus, I believe it would be hard to find that it has not been "deeply embedded."

LRSD III, 2007 WL 624054, at *15.

Again, in commenting on LRSD's efforts to comply with the program assessment requirement of the 2004 Compliance Remedy, the district court stated:

I find that LRSD's administrators have substantially complied with their obligations in section B of the 2004 Compliance Remedy by implementing a comprehensive program assessment process as a permanent part of LRSD's curriculum. I further find that, in implementing the comprehensive program assessment process, LRSD has acted in good faith.

LRSD has gone the extra mile to ensure that its program assessment process is and will continue to be a permanent part of its curriculum. I would be hard pressed not to conclude that LRSD has not "deeply embedded" that process as a permanent part of its curriculum, although this standard is now abandoned.

Id. at *18-19.

True enough, the district court noted that because it had struck the "deeply embedded" requirement as being too subjective, the opinions of LRSD's board members on that issue were rendered irrelevant. Id. at *24. Nevertheless, the overall tenor of the district court's careful, step-by-step, program-by-program review of LRSD's efforts to comply with the 2004 Remedy satisfies us that Joshua has not

demonstrated that the district court's application of the good faith standard of review resulted in any prejudice to it. As the district court several times noted in its order, Joshua failed to present any evidence in support of its challenges to certain aspects of LRSD's program evaluations:

> In Joshua's November 15, 2006 Objections to LRSD's Compliance Report, the only challenge it makes to any of the eight program evaluations is in paragraph 5, which contains the following cryptic statement: "[T]he evaluations of the Read 180 program and the 21st Century Community Learning Centers program contain insufficient descriptions of the program being evaluated to meet LRSD's own standards and the Court's Order." To the extent that Joshua was serious about challenging sufficiency of how these two programs were described, they failed to present any evidence to support this argument during the January 2007 unitary status hearing. Accordingly, I find that LRSD has substantially complied with all of its obligations under section C of the 2004 Compliance Remedy.

Id. at *20 (footnotes omitted).

> I find that Dr. Ross and Dr. Catterall performed all of the record keeping obligations required in section E of the 2004 Compliance Remedy. In addition, during the January 2007 unitary status hearing, Joshua did not offer any arguments or testimony directed at challenging the obligations imposed under this section of the remedy.
>
> . . . .
>
> Finally, during the January 2007 unitary status hearing, Joshua did not offer any evidence challenging LRSD's compliance with any of the obligations in . . . section [F] of the remedy.

Id. at *21.

Accordingly, we conclude that the district court did no disservice to Joshua by concluding that a showing by LRSD of its good faith compliance with the 2004 Compliance Remedy and the 1998 Revised Plan was sufficient to ensure that the long-range goals of that Remedy and Plan would be accomplished.

As a measure of its confidence that those goals would be accomplished, the district court stated:

> All seven Board members agreed that improving the academic achievement of African-American students is of great importance, and that the District will need to continue to implement, assess, and evaluate § 2.7 programs for the foreseeable future. They support Regulation IL-R and believe that it must be made a permanent part of LRSD's curriculum. They believe [the Planning, Research, and Evaluation Department] plays a crucial role in overseeing the implementation, assessment, and evaluation of § 2.7 programs. By finding common ground on these four important priorities, I am optimistic that the Board will continue to ensure that the comprehensive program assessment process remains a permanent part of LRSD's curriculum for as long as it takes to improve the academic achievement of African-American students.

Id. at *25.

IV.

In bringing this litigation to a close, we deem it appropriate to set forth the district court's concluding comments:

> Nine years after executing the March 15, 1998 Revised Plan, LRSD finally has achieved unitary status by substantially complying with all of the obligations contained in that document. This means that LRSD is no longer under any supervision and monitoring obligations from me, ODM, or Joshua. LRSD's Board can now operate the district as it sees

-12-

fit; answerable to no one except LRSD's students and patrons and the voters who elected them to office. While the road has been long and at times frustrating–for LRSD and for me–I want to express my heartfelt best wishes as LRSD begins to operate, as our Founders intended, under control of the citizens of the City of Little Rock.

Id. at *25.

In joining in those comments, we express our appreciation to the district court, as well as to the predecessor courts, for the untiring, unflagging efforts that have resulted in LRSD's compliance with the requirements of the 1998 Revised Plan.

The judgment declaring the Little Rock School District to be completely unitary is affirmed.

GRUENDER, Circuit Judge, concurring.

As I explained in my dissent in *Little Rock School District v. North Little Rock School District*, I believe that the district court abused its discretion in imposing the 2004 Compliance Remedy by creating a new requirement that the program assessment process be "deeply embedded." 451 F.3d at 541. While I appreciate the district court's willingness to reconsider its prior decision and adopt the position that I advocated in my dissent, I am not convinced that the law-of-the-case doctrine may be so easily set aside. However, because the district court effectively found that the "deeply embedded" requirement was satisfied, I concur.

As the Court correctly notes, the law-of-the-case doctrine is a "means to prevent the relitigation of a settled issue in a case." *Gander Mountain Co.*, 540 F.3d at 830. "Accordingly, we will reconsider a previously decided issue only if substantially different evidence is subsequently introduced or the decision is clearly erroneous and

works manifest injustice." *Little Earth of the United Tribes, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 807 F.2d 1433, 1441 (8th Cir. 1986). Even if the Court's earlier decision was "at most a reluctant, tepid, [and] grudging," affirmance of the "deeply embedded" requirement imposed by the district court's 2004 Compliance Remedy, *ante* at 8, I find no support for such an exception to the law-of-the-case doctrine. Nor do I find support for an exception to the doctrine arising from a "district court's authority to oversee and enforce a complex, highly detailed settlement agreement." *Ante* at 9. Therefore, I find that the law-of-the-case doctrine prevents us from simply affirming the district court's opinion in its entirety.

Nevertheless, I would affirm the district court's decision because, upon reviewing the evidence submitted at the January 2007 hearing, the district court effectively found that the "deeply embedded" requirement had been met. Therefore, I concur in that part of the Court's opinion holding that the district court's application of the good faith standard of review did not result in any prejudice to Joshua and in the Court's judgment declaring that the Little Rock School District is completely unitary.

_____