William H. GRANT, Plaintiff–Appellee,

v.

PREFERRED RESEARCH, INC., a Georgia corporation, Defendant–Appellant.

No. 88–7772.

United States Court of Appeals, Eleventh Circuit.

Sept. 29, 1989.

Before RONEY, Chief Judge, JOHNSON, Circuit Judge, and MELTON *, District Judge.

JOHNSON, Circuit Judge:

This appeal arises from the entry of judgment after a jury trial against the defendant in the amount of $25,000 in compensatory damages and $75,000 in punitive damages on claims brought under Alabama law for breach of contract and fraud. On this appeal, we consider whether the statute of limitations barred plaintiff's fraud claim as a matter of law, and whether the district court erred in denying defendant's motion for judgment notwithstanding the verdict on plaintiff's contract claim.

## I. STATEMENT OF THE CASE

Preferred Research ("Preferred") is a Georgia corporation that licenses individuals to perform title examinations, real estate appraisals, and real estate closings. Preferred licensed plaintiff William H. Grant ("plaintiff"), a law school graduate, to perform title examinations and prepare real property reports in Montgomery, Alabama. Preferred engaged plaintiff through a contractual licensing agreement. Under this contract, plaintiff was to perform title searches, send reports to the customer, and send copies of the reports to Preferred. Preferred deducted a $5.00 administration fee for each report, and paid 80% of the remainder to plaintiff as a commission. This dispute centers around whether the licensing agreement between plaintiff and Preferred included errors and omissions insurance coverage for plaintiff.

Preferred maintained a professional liability insurance policy as protection in the event of errors and omissions committed by Preferred or its agents. The policy covered only employees of Preferred; plaintiff was retained as an independent contractor. In April of 1984, approximately seven years after plaintiff began working for Preferred, a client filed suit against plaintiff, claiming that one of plaintiff's employ-

George L. Beck, Jr., Dennis Pierson, Montgomery, Ala., for defendant-appellant.

Marvin H. Campbell, Montgomery, Ala., for plaintiff-appellee.

* Honorable Howell W. Melton, U.S. District Judge for the Middle District of Florida, sitting by designation.

ees omitted an existing mortgage from a real property report. When plaintiff informed Preferred of the claim, Preferred president Richard McCauley refused to submit the claim to Preferred's errors and omissions carrier. Plaintiff paid the $3,495.56 claim out of his own pocket, and subsequently purchased his own errors and omissions policy in March 1985.

On January 22, 1988, plaintiff wrote to Preferred demanding that it cure several alleged breaches of the licensing agreement, including breach of what he claimed was an agreement to provide errors and omissions coverage. Plaintiff demanded compensation for the errors and omissions policy he had obtained, and demanded a refund of each of the $5.00 per report fees that Preferred had charged, claiming that Preferred had represented to him that the $5.00 fees were for the errors and omissions insurance.[1] Plaintiff threatened to terminate his business arrangement with Preferred within fourteen days if his demands were not met. On January 26, 1988, one of Preferred's representatives attempted to audit plaintiff's business, but plaintiff refused the auditor access to the records. On February 12, 1988, plaintiff wrote to Preferred to inform Preferred that he was terminating the employment agreement effective February 29, 1988. On February 17, 1988, Preferred's president wrote to plaintiff terminating the contract immediately.

On February 12, 1988, plaintiff also filed suit for conversion, fraud, and breach of contract based on Preferred's retention of the $5.00 fees and its failure to obtain insurance for plaintiff. On May 12, 1988, Preferred counterclaimed for breach of contract based on plaintiff's retention of invoices from the last half of the month of February 1988. On August 19, 1988, Preferred moved for summary judgment, contending among other things that the statute of limitations had expired on plaintiff's

fraud claim. This motion was denied. The district court for the Middle District of Alabama held a jury trial on September 6–8, 1988. The district judge submitted the statute of limitations issue to the jury. The jury returned a general verdict in favor of plaintiff on the fraud and breach of contract claims, and in favor of Preferred on its cross claim for breach of contract.[2] The jury awarded plaintiff $25,000 compensatory and $75,000 punitive damages, and awarded Preferred $2,000 on the cross claim. After the verdict was rendered, Preferred filed a motion for judgment notwithstanding the verdict, which the district court denied. Preferred appeals.

## II. DISCUSSION

### A. *Statute of Limitations*

Plaintiff argues that Preferred waived its statute of limitations defense by failing to plead it as an affirmative defense as required by Fed.Rule Civ.P. 8(c).[3] *See American Nat. Bank of Jacksonville v. Federal Deposit Ins. Corp.,* 710 F.2d 1528, 1537 (11th Cir.1983) (affirmative defense of statute of limitations is waived if not pleaded). The Supreme Court has held that the purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut it. *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 350, 91 S.Ct. 1434, 1453, 28 L.Ed.2d 788 (1971). Thus, if a plaintiff receives notice of an affirmative defense by some means other than pleadings, "the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice." *Hassan v. U.S. Postal Service,* 842 F.2d 260, 263 (11th Cir.1988). When there is no prejudice, the trial court does not err by hearing evidence on the issue. *Id.* Preferred raised the statute of limitations defense in a motion for summary judgment filed in August of 1988, approximately one month before trial. As a

---

1. Those charges actually represented fees for registering each property report with Preferred's insurance company.

2. During trial, plaintiff withdrew the conversion claim.

3. Fed.R.Civ.P. 8(c) states in pertinent part: "In pleading to a preceding pleading, a party shall set forth affirmatively ... statute of limitations ... and any other matter constituting an avoidance or affirmative defense...."

result, plaintiff was fully aware that Preferred intended to rely on a statute of limitations defense. Further, plaintiff does not assert any prejudice from the lateness of the pleading. Under these circumstances, the district court correctly addressed the statute of limitations issue on the merits. *See Hassan*, 842 F.2d at 263.

■ Preferred argues that the district court erred in denying its motion for judgment notwithstanding the verdict on plaintiff's fraud claim because the evidence clearly indicated that the statute of limitations barred that claim. In considering a motion for judgment notwithstanding the verdict, both the trial and appellate courts must consider all of the evidence in the light most favorable to the party opposing the motion. This Court asks whether reasonable people could have differed based upon the evidence submitted. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1044–45 (11th Cir.1989) (quoting *Boeing v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969) (en banc)).

■ The statute of limitations for fraud in Alabama is set out in Ala.Code Ann. § 6–2–3.[4] Under that section, a plaintiff has two years from the date he discovers or should be aware of the fraud in which to file a fraud claim. Thus, Section 6–2–3 is actually a "tolling" statute: the limitations period is tolled until the plaintiff discovers or reasonably should have discovered the fraud. *See Ryan v. Charles Townsend Ford, Inc.*, 409 So.2d 784 (Ala.1981). The limitations period begins to run "once the fraud is readily discoverable or the potential plaintiff is on notice that a fraud may have been perpetrated." *Lampliter Dinner Theater, Inc. v. Liberty Mutual Ins. Co.*, 792 F.2d 1036, 1042–43 (11th Cir.1986). The time when the plaintiff should have discovered the fraud is a question of fact. *See Sexton v. Liberty National Life Ins. Co.*, 405 So.2d 18, 21 (Ala.1981).

In this case, the aggrieved client filed the claim for $3,495.56 against plaintiff in April 1984, and Preferred required plaintiff to pay the claim instead of seeking payment from Preferred's insurance company. In response, plaintiff purchased his own errors and omissions policy in March 1985. The issue on appeal is whether these events, among others, indicate as a matter of law that plaintiff knew or should have known that Preferred's representations that plaintiff was covered under Preferred's errors and omissions insurance policy were or may have been fraudulent. If so, the limitations period of Section 6–2–3 would have begun running by March 1985 at the latest, and plaintiff's February 12, 1988 fraud claim would be time-barred.

The jury granted a general verdict in favor of plaintiff, implicitly finding that the statute of limitations was triggered sometime after February 1986. Ordinarily this Court reviews a jury's findings with great deference. *See Deakle v. John E. Graham & Sons*, 756 F.2d 821, 827 (11th Cir.1985) ("jury's verdict should not be disturbed if there is competent evidence in the record to support it"). Under some circumstances, however, this Court may determine the time of discovery of fraud as a matter of law. *Sexton*, 405 So.2d at 21. Under the circumstances of this case, we find as a matter of law that the statute of limitations on plaintiff's fraud claim began to run by March 1985 at the latest, when plaintiff purchased his own errors and omissions policy. To trigger the statute of limitations, plaintiff needed only to have the knowledge that would lead a reasonable person to make further inquiry. *Sexton*, 405 So.2d at 21. Preferred's April 1984 refusal to submit the $3,495.56 claim based on plaintiff's error to its insurance company seems sufficient to have put plaintiff on notice that he was not covered under Preferred's policy.[5] Additionally,

---

4. That section provides: "In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fraud, after which he must have two years within which to prosecute his action."

5. In *Sexton*, for example, the court held that insurance company's failure on two prior claims to provide represented benefits was sufficient as a matter of law to have put plaintiff on notice that the benefits representations may have been fraudulent.

plaintiff's purchase of his own errors and omissions insurance policy in March 1985 constitutes an awareness—or at least a suspicion—that Preferred's policy did not provide coverage. *See Lampliter Dinner Theater,* 792 F.2d at 1042–43 & n. 5 (reasonable person would have suspected fraud when required to purchase insurance coverage he thought he already had). Finally, plaintiff is a law school graduate; his legal training should have increased his awareness of the significance of Preferred's refusal to submit the claim to its carrier.

The burden was on plaintiff to prove that he was unaware of facts that would have led a reasonable person to suspect fraud. *Lampliter,* 792 F.2d at 1043. Plaintiff failed to meet this burden as a matter of law. The evidence indicated overwhelmingly that at least by March 1985, when plaintiff purchased his own errors and omissions policy, plaintiff was aware of facts that would have led a reasonable person to make further inquiry. The district court erred in failing to grant Preferred's motion for judgment notwithstanding the verdict on plaintiff's fraud claim because that claim is barred by the statute of limitations.

### B. *Contract Claim*

The trial court instructed the jury that the licensing contract between Preferred and plaintiff was ambiguous as a matter of law. The question of whether a contract is ambiguous is a question of law subject to *de novo* review. *See ERA Commander Realty, Inc. v. Harrigan,* 514 So.2d 1329, 1333 (Ala.1987); *see generally Southeast Nursing Home, Inc. v. St. Paul Fire & Marine Ins. Co.,* 750 F.2d 1531 (11th Cir. 1985). Plaintiff was the licensee under this contract. Paragraph 7(a) of the contract provided as follows:

> The nature of the licensed business is such that errors and omissions insurance coverage is essential. Recognizing that uniform coverage also is essential, *Licensee agrees that (1) the errors and omissions coverage provided by Licensor, at the rates promulgated by Licensor, must and will be utilized exclusively;* ... [emphasis added].

Paragraph 15 of the contract provided in part:

> Licensee agrees to carry his own liability insurance with Licensor as an additional named insured, and insurance for fire and casualty in the amounts and under the policies which are approved in writing by the Licensor.

The district court correctly held that these provisions are ambiguous. Paragraph 7(a) required plaintiff to utilize Preferred's errors and omissions policy; Paragraph 15 required plaintiff to purchase his own "liability" policy and to list Preferred as an additional named insured. The provisions are in direct conflict regarding plaintiff's responsibility to provide his own errors and omissions liability insurance coverage.

■ Generally, a party may not introduce parol or extrinsic evidence to aid in interpreting a contract unless the contract is ambiguous. *See generally Hashwani v. Barbar,* 822 F.2d 1038, 1040 (11th Cir. 1987). Because the district court correctly held that the contract between Preferred and plaintiff was ambiguous, plaintiff could introduce extrinsic evidence about the meaning of the contract. The trial court admitted such extrinsic evidence, including evidence that Preferred's agents represented to plaintiff that he was covered under the policy. This evidence was sufficient for the jury to have concluded that Preferred contracted to provide errors and omissions insurance coverage to the plaintiff. Thus, the district court correctly denied Preferred's motion for judgment notwithstanding the verdict on the contract claim.

### C. *Jury Verdict*

■ At the conclusion of the evidence, the trial judge, during the course of the general charge to the jury, instructed the jury that plaintiff could recover such damages for breach of contract as would "place the injured party in the same condition he would have occupied if the contract had not been breached." He further instructed the jury on the fraud and punitive claims as follows:

Now, Grant seeks two types of damages on his fraud claim from Preferred Research. He seeks compensatory damages and punitive damages.

As to the compensatory damages he seeks on his fraud claim, you are instructed as follows:

Compensatory or actual damages are allowed and should be awarded where the plaintiff satisfies the jury by a preponderance of the jury [sic] that the plaintiff has been injured or damaged as a proximate result of the wrongful act complained of. The purpose of awarding compensatory damages is to fairly and reasonably compensate the injured party for the loss or injury sustained. Compensatory damages are intended as money compensation for the party wronged to compensate him for his injuries or other damages which have been inflicted upon him as a proximate result of the wrong complained of.

Now, as I said a moment ago, in this case Mr. Grant also seeks punitive damages. You may award such damages only if you find that Grant has established all of the elements of fraud that I discussed earlier, and further find that Preferred Research made a misrepresentation willfully and recklessly with intent to injure Grant. That is, if you further find that Preferred Research made a misrepresentation willfully or recklessly, with the intent to injury [sic] Grant.

I charge you, however, that you may not award punitive damages if you find that any misrepresentation made by Preferred Research, Inc., was made innocently or mistakenly.

Now, the purpose of awarding punitive or exemplary damages is to allow money recovery to the plaintiff by way of punishment to the defendant, and for the added purpose of protecting the public by deterring the defendant and others from doing such wrong in the future. The imposition of punitive damages is entirely discretionary with the jury. Should you award punitive damages, in fixing the amount you must take into consideration the character and degree of the wrong as shown by the evidence in

the case and the necessity of preventing similar wrongs.

After deliberating, the jury delivered the following verdict:

We, the Jury, find the issues in favor of the plaintiff, William H. Grant, and against the defendant, Preferred Research, Inc., and assess his damages as follows:

Compensatory damages at $25,-000.00

Punitive damages at $75,000.00

This the 8 day of September, 1988.

■ When the jury delivers a verdict based upon several possible grounds, one of which is not supported by the evidence or was improperly submitted to the jury, and the appellate court has no means of determining on what basis the jury reached its verdict, the verdict must be reversed and remanded. *Kicklighter v. Nails by Jannee, Inc.*, 616 F.2d 734, 742 (5th Cir. 1980), *citing Mixon v. Atlantic Coast Line R.R.*, 370 F.2d 852, 860 (5th Cir.1966) (Brown, J. concurring), *judgment vacated in part*, 380 F.2d 553 (5th Cir.1967) (in such cases, court must assume that the jury relied on the improper ground). *See also Sunkist Growers, Inc. v. Winckler & Smith Citrus Products Co.*, 370 U.S. 19, 30, 82 S.Ct. 1130, 1136, 8 L.Ed.2d 305 (1962) (general verdict cannot be upheld if error was found on any one issue).

The district judge instructed the members of the jury that they could award punitive damages for *fraud;* he did not instruct them that they could award punitive damages for breach of contract. Because the jury awarded $75,000.00 in punitive damages, it appears certain that the jury awarded those damages for the fraud claim. Because the fraud claim is time-barred, such an award is invalid. If the jury based the $25,000.00 compensatory award on the fraud claim, as appears likely, that award is also invalid.

■ Even if the jury based its damage award on the contract claim, however, the evidence does not support an award of $25,-000 on that claim. Plaintiff claimed $3495 for the 1984 claim he paid, and $3571 for the cost of his own personal errors and omissions policy. He claimed $11,944 from

the total number of $5.00 fees Preferred deducted for each report filed. Even if the $11,944.00 figure were correct, plaintiff's claimed damages totalled only $19,010.00. The $11,944.00 amount, however, related to all the fees collected during plaintiff's tenure with Preferred beginning in 1977 (plaintiff may not be entitled to any of these fees); the licensing contract at issue in this case was signed February 19, 1983. Plaintiff is entitled only to damages which arise out of the contract in controversy, and any fees paid before February 1983 are irrelevant. In sum, the evidence does not support an award of $25,000 in compensatory damages on the breach of contract claim. Where this Court holds that judgment notwithstanding the verdict should have been granted on one claim, and the damages award appears to be contrary to the weight of the evidence on the surviving claim alone, a new trial is required. *See generally Payton v. Abbott Labs*, 780 F.2d 147 (1st Cir.1985). Consequently, this case should be remanded to the district court for a new trial on plaintiff's breach of contract claim.

### III. CONCLUSION

The judgment in favor of plaintiff on the fraud claim is REVERSED. The case is REMANDED to the district court for a new trial on plaintiff's contract claim.