<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-1613**

GRUNLEY WALSH U.S., LLC; KENNETH M. GRUNLEY; GRUNLEY
CONSTRUCTION COMPANY, INCORPORATED,

　　　　　Plaintiffs - Appellants,

　　　v.

LOREN RAAP; G-W MANAGEMENT SERVICES, LLC,

　　　　　Defendants – Appellees,

　　　and

UNITED STATES GENERAL SERVICES ADMINISTRATION,

　　　　　Defendant.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria. Liam O'Grady, District
Judge. (1:08-cv-00446-LO-JFA)

Argued: May 13, 2010　　　　　Decided: June 30, 2010

Before NIEMEYER, GREGORY, and SHEDD, Circuit Judges.

Affirmed by unpublished opinion. Judge Gregory wrote the
opinion, in which Judge Niemeyer and Judge Shedd joined.

**ARGUED:** Michael Jay Schrier, K&L GATES, LLP, Washington, D.C.,
for Appellants. Brian Lawrence Schwalb, VENABLE, LLP,
Washington, D.C., for Appellees. **ON BRIEF:** Kara A. Elgersma,

K&L GATES, LLP, Washington, D.C., for Appellants.  Damon W. D. Wright, VENABLE, LLP, Washington, D.C., for Appellees.

———————

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

The United States District Court for the Eastern District of Virginia entered summary judgment in favor of the defendants, Loren Raap ("Raap") and G-W Management Services, LLC, in a suit alleging trademark infringement and unfair competition under federal and common law. The court based its grant of summary judgment on a release signed in November 2007 when The Grunley Walsh, LLC sold its international construction segment. The plaintiff, Grunley Walsh U.S. ("GW"), now argues that the court erred in considering the release when the defendants failed to plead it as an affirmative defense, and that even if such consideration was proper, the court erred on the merits of the release defense. For the reasons set forth below, we affirm.

I.

In 1998, Grunley Walsh Joint Venture, LLC ("GWJV") was formed when Kenneth Grunley ("Grunley") and James Walsh ("Walsh") merged their construction companies. GWJV earned a reputation as a premier construction company in the Washington, D.C. area, acting as a full-service general contracting firm.[1]

---

[1] Notable projects include the World War II Memorial on the National Mall, the stabilization and preservation of the Washington Monument, Washington Metropolitan Area Transit Authority Metro escalator canopy construction, and work on a number of Smithsonian Institution properties.

Raap was involved in the creation of GWJV and was named President/General Manager of the company, a position he held from 1998 until his termination on May 31, 2007. GWJV changed its name to The Grunley Walsh, LLC in 2004.

Meanwhile, in June 2000, Grunley, Walsh, and Raap created Grunley Walsh Management Services, LLC to handle mainly small business set-aside projects. Grunley and Walsh each owned 24.5% of Grunley Walsh Management Services, with Raap owning the remaining 51%. In 2002, Grunley and Walsh sold their interests to Raap. Raap later changed company's name to G-W Management Services, LLC ("GWMS") to avoid name confusion and potential small business regulation violations. However, Raap continued to act as President and General Manager of the Grunley Walsh entity while owning and operating GWMS. During this time, "with the consent of Mr. Grunley and Mr. Walsh, Mr. Raap ran GWMS out of the Grunley Walsh office, utilizing Grunley Walsh personnel and office equipment." J.A. 422.[2] "GWMS and Grunley Walsh executed a contract to govern this dynamic," which lasted until Raap moved GWMS to a different location in January 2007. Id. During this close relationship, Grunley and Walsh knew confusion among users of their construction services was likely because of

---

[2] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

4

the continuing similarity in company names but admitted that getting Raap to again change GWMS's name was "not the highest priority." Id. at 681-83, 719-21.

Aside from its domestic business, The Grunley Walsh, LLC performed international construction work. On December 23, 2006, the owners of The Grunley Walsh, LLC entered into a Membership Interest Purchase Agreement ("MIPA") with Robert Farah for the sale of the international segment of the Grunley Walsh entity and the retention of the domestic segment. As the district court found, "[i]n order to accommodate this international and domestic division of property, Mr. Grunley and Mr. Walsh restructured their corporate framework. First, they changed the name of The Grunley Walsh, LLC to Grunley Walsh International [('GWI')]." Id. at 423. Grunley and Walsh then used their separate construction companies to create GW. The international business was to go to GWI, and the domestic business was to go to GW. To accomplish this, the MIPA expressly transferred everything to GW except for enumerated "Retained Property" such as certain international construction contracts, international past performance, facility clearances, and other information related to international work. Such retained property was to remain with GWI.

Significantly, the MIPA contained a liability release, called the "Sellers' Release," ("the Release") which was signed

5

by Grunley and Walsh in November 2007. The sellers were identified as Kenneth M. Grunley Construction Co. and James V. Walsh Construction Co. The release also named these two identities as sole owners of the "Company," which was GWI. The buyer was Farah. In pertinent part, the Release states:

> Each Seller, on behalf of itself and each of its legal representatives, affiliates, successors and assigns, and each of such legal representatives', affiliates', successors' and assigns' Representatives (collectively, the "Related Parties"), hereby releases and forever discharges Buyer, the Company and each of their respective individual, joint or mutual, past, present and future Representatives, affiliates, stockholders, members, controlling persons, successors and assigns (individually, a "Releasee" and collectively, "Releasees"), from any and all claims, demands, Proceedings, causes of action, Orders, obligations, contracts, agreements, debts and liabilities whatsoever, whether known or unknown, suspected or unsuspected, both at law and in equity, which such Seller or any of its Related Parties now has, has ever had or may hereafter have against the respective Releasees arising at any time prior to the Closing, . . . .

Id. at 2877.[3]

Grunley and Walsh "eventually became concerned that Mr. Raap was engaging in improper conduct while operating GWMS, such

---

[3] As defined in the MIPA, "'Representative' means with respect to a particular Person, any director, officer, employee, agent, consultant, advisor, or other representative of such Person, including legal counsel, accountants, and financial advisors." J.A. 3006. "'Person' means any individual, corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, estate, trust, association, organization, labor union, or other entity or Governmental Body." Id. at 3005.

as using the GRUNLEY-WALSH mark without permission to acquire government construction projects for GWMS" and "divert[ing] business opportunities from Grunley Walsh to GWMS." Id. at 422. Therefore, Grunley and Walsh fired Raap in May 2007, and GW commenced this suit against Raap and GWMS. On August 15, 2008, GW filed an Amended Complaint asserting trademark and unfair competition claims under both federal and common law.[4]

The parties then filed lengthy cross-motions for summary judgment. GWMS and Raap argued that GW did not exist during the relevant time period and thus had no damages or standing. GWMS and Raap also claimed that the close relationship over the years between GWMS and GWI barred GW's claims. Although they did not plead "release" as an affirmative defense, in their motion, GWMS and Raap emphasized that with the sale of their ownership in GWI, Grunley and Walsh executed the MIPA, which included a release from any claims arising before the MIPA's execution. This release, GWMS and Raap argued, applied to Raap. GW, on the other hand, argued that the release did not apply to Raap or GWMS and that GWMS's frequent use of "Grunley Walsh Management

_____

[4] GW also asserted claims for unjust enrichment and breach of contract. The parties stipulated to dismissal of the common law fraud and negligent misrepresentation claims.

Raap and GWMS filed counterclaims, which were later dismissed without prejudice.

7

Services" in correspondence constituted trademark infringement and created confusion about the relationship between GWMS and GWI.

The district court, after hearing argument, denied GW's motion and granted the summary judgment motion filed by Raap and GWMS. The court first considered whether the Release was a proper basis for summary judgment. The court found that although Raap or GWMS did not plead "release" as an affirmative defense, GW knew about, and was therefore not prejudiced by, consideration of the Release. Although no parol evidence was offered, the court stated it would not consider such evidence in interpreting the Release because its terms were clear and unambiguous. Id. at 432.

After examining the Release, the court found GW to be a releasor because it is an "affiliate" of sellers Kenneth M. Grunley Construction Co. and James V. Walsh Construction Co. using a control-based definition of "affiliate." Id. at 433-34. The court next found GWMS to be a releasee because "it is a 'past affiliate' of 'the Company' [GWI]." Id. at 435. Finally, Raap was found to be a releasee because he is a "past Representative" "of all three Grunley Walsh iterations that existed between 1998 and 2007, including [GWI] (i.e. 'the Company')" based on his service as President of the respective Grunley Walsh entity until May 30, 2007. Id. at 437.

8

Because the Release discharged the releasees "from any and all claims" arising from facts occurring before the closing date of November 6, 2007, the court "[held] that [GW] released GWMS and Mr. Raap from the claims it filed in this suit, to the extent those claims arose from facts occurring on or before the closing date of November 6, 2007." Id. at 438. Additionally, because the court found "none of the infringing uses that [GW] accuses Mr. Raap and GWMS of committing occurred after November 6, 2007," it concluded that "the 'use' element common to the trademark and unfair competition claims in this case are not met" and granted summary judgment on this ground as well. Id. at 440 (emphasis added). GW timely appealed.

## II.

Whether the district court erred in considering the release defense when it was not affirmatively pled in the answer is a question of law that we review de novo. See Eriline Co. S.A. v. Johnson, 440 F.3d 648, 653 (4th Cir. 2006).[5] If the court did

---

[5] Our precedent is less than clear on the standard of review in this situation. Compare Eriline Co. S.A., 440 F.3d at 653 ("Whether a district court has properly considered a statute of limitations defense sua sponte is a question of law that we review de novo."), with Polsby v. Chase, 970 F.2d 1360, 1364 (4th Cir. 1992) (holding the district court did not abuse its discretion by allowing the defendant to raise an affirmative defense after answering), vacated and remanded on other grounds, (Continued)

not err in such consideration, we then review its grant of summary judgment de novo. <u>Synergistic Intern., LLC v. Korman</u>, 470 F.3d 162, 170 (4th Cir. 2006).

III.

A.

GWMS and Raap had the burden of affirmatively pleading "release." <u>See</u> Fed. R. Civ. P. 8(c). Yet, neither party pled this affirmative defense in their answer. The district court found that despite this failure, the pleaded affirmative defenses of "accord and satisfaction" and "Plaintiff's common law tort claims are barred by contract" put GW on notice of a possible release defense and that even if "release" was not pled properly, GW was not prejudiced or unfairly surprised by the court's consideration of the defense. GW argues that the failure of GWMS and Raap to affirmatively plead release resulted in waiver of the defense such that the court's reliance on it as the basis for summary judgment constitutes reversible error. We disagree.

As this Court has found, "it is well established that an affirmative defense is not waived absent unfair surprise or

_____

507 U.S. 1048 (1993). However, because the question of waiver is one of law, a reviewing court should apply de novo review.

10

prejudice." Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc., 380 F.3d 200, 205 n.3 (4th Cir. 2004); see also Brinkley v. Harbour Recreation Club, 180 F.3d 598, 612 (4th Cir. 1999) ("[T]here is ample authority in this Circuit for the proposition that absent unfair surprise or prejudice to the plaintiff, a defendant's affirmative defense is not waived when it is first raised in a pre-trial dispositive motion."), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). This is because "[t]he Supreme Court has held that the purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut it." Moore, Owen, Thomas & Co. v. Coffey, 992 F.2d 1439, 1445 (6th Cir. 1993) (citing Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 350 (1971)). "Thus, if a plaintiff receives notice of an affirmative defense by some means other than pleadings, 'the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice.'" Grant v. Preferred Research, Inc., 885 F.2d 795, 797 (11th Cir. 1989) (quoting Hassan v. U.S. Postal Serv., 842 F.2d 260, 263 (11th Cir. 1988)).

In this case, the district court properly found that GW was not unfairly surprised or prejudiced by the court's consideration of the release defense as to Raap. Courts have found that affirmative defenses raised for the first time in summary judgment motions may provide the required notice. See,

11

e.g., Brinkley, 180 F.3d at 612-13 (affirming the district court's order of summary judgment based on an affirmative defense first raised in the defendant's summary judgment motion after noting the plaintiff had "ample opportunity to respond"); Coffey, 992 F.2d at 1445 (finding that the opposing party was put on notice of the affirmative defense of fraud when raised in response to a motion for summary judgment); Kleinknecht v. Gettysburg Coll., 989 F.2d 1360, 1373-74 (3d Cir. 1993) (holding that the plaintiff received sufficient notice of the affirmative defense because it was raised in the defendant's summary judgment motion). Here, Raap specifically raised the Release in the summary judgment motion. J.A. 339 (subsection entitled "GWUS Released Mr. Raap From All Claims"). Additionally, the parties fully briefed and argued the merits of the release affirmative defense before the district court. We therefore find that GW has shown no unfair surprise or prejudice from consideration of an issue GW itself fully argued.

However, the summary judgment motion and the reply filed by Raap and GWMS reference the Release applying only to Raap. The district court appears to have sua sponte considered whether the Release applied to GWMS. Although a closer case, whether GW was unfairly surprised or prejudiced remains the relevant consideration. Because the Release was GW's own document, GW did argue to the court that the Release did not apply to GWMS,

12

and GWMS and Raap pled affirmative defenses that highlighted the relevance of the Release, we find that GW was not unfairly surprised or prejudiced by the court's consideration of the release defense as to GWMS.

At the beginning of discovery, Raap and GWMS requested the MIPA's production. GW then produced the documents, including the Release. Thereafter, GW, along with GWMS and Raap, included the MIPA and the Release in their respective exhibit lists filed with the court. Thus, GW simply was not surprised by the court's consideration of documents which GW's principals signed and which GW itself was asked about and produced. See Jones v. Miles, 656 F.2d 103, 108 (5th Cir. 1981) ("[I]n practice[,] an affirmative defense is not waived to the extent . . . that the opposing party's own evidence discloses the defense, necessarily indicating his express consent. Neglect to affirmatively plead the defense is simply noncompliance with a technicality and does not constitute a waiver where there is no claim of surprise." (citation omitted)).

Furthermore, at the summary judgment hearing, the court specifically asked whether GWMS was covered by the terms of the Release. J.A. 395. GW replied that the Release did not apply to GWMS "[b]ecause G-W Management Services was never an agent or an officer or representative of Grunley Walsh in any way, shape or form. They were two separate entities, they always were two

13

separate entities." Id. at 395-96. When the court stated "Although Grunley and Walsh were owners at one time," GW responded, "At one time. . . . I don't think there is any reasonable way to interpret that release language to include that because at no point was G-W Management Services an agent, representative or . . . had any other relationship with Grunley-Walsh International." Id. at 396. Thus, beyond being aware of the Release, GW specifically addressed whether it applied to GWMS.

GWMS and Raap additionally argue that the pled affirmative defenses of "accord and satisfaction" and "Plaintiff's common law tort claims are barred by contract" put GW on notice of a possible release defense. The district court agreed, and adopted this as one rationale for its consideration of the Release. While "release" is unquestionably a different affirmative defense, which should have been pled, we believe the district court correctly noted that the pled affirmative defenses "convey[ed] to [GW] that Mr. Raap and GWMS believed a contract existed that barred the claims filed in this suit." Id. at 428. This notice precludes GW from now showing that it was unfairly surprised by the court's consideration of the Release, and this preclusion applies equally to both Raap and GWMS.

14

B.

GW argues that even if the district court did not err in considering the Release, the court erred in concluding that it barred the suit from proceeding. Preliminarily, GW claims that the court committed legal error in declining to consider parol evidence in interpreting the Release, which was the court's basis for dismissing GW's claims to the extent they arose from facts occurring on or before November 6, 2007.[6] However, GW's argument is a bit of a red herring. GW offered no parol evidence to demonstrate any contrary interpretation of the Release and never indicated an intention to do so. Indeed, GW conceded at oral argument that no such parol evidence is in the record. As the party arguing that parol evidence should have been considered, GW had the burden to proffer such evidence before the district court. Therefore, absent any evidence demonstrating that the Release means anything other than what it says, we find the court's statement that it would not consider parol evidence immaterial.

We next turn to GW's argument that the court erred in interpreting the plain language of the Release to include Raap

---

[6] GW does not contest the portion of the summary judgment order dispensing with claims arising from facts occurring on or after November 6, 2007.

and GWMS.[7] As to Raap, GW has always asserted that he was a past employee or agent of GWI. Id. at 20-21. Based on this uncontested fact and the definitions section of the MIPA which defined "Representative" as "any director, officer, employee, agent, consultant, advisor or other representative" of GWI, id. at 3006, the court determined that Raap was a "past Representative":

> Mr. Raap unquestionably qualifies as a "past Representative" of all three Grunley Walsh iterations that existed between 1998 and 2007, including [GWI] (i.e. "the Company"). Specifically, Mr. Raap began working as President of [GWJV] in 1998 and was serving in this same capacity when [GWI] was formed on December 15, 2006. Mr. Raap continued working as President of [GWI] for over five months until he was fired on May 30, 2007.

Id. at 437. We agree with the straight-forward analysis of the district court.

GW repeats an argument rejected by the district court, claiming that the term "Representative" covers only employees acting in their professional capacity. This, however, contradicts the plain language of the Release, which refers to "any director, officer, employee, agent, consultant, advisor, or other representative" as well as "any and all claims." Id. at 2877 (emphasis added). As the district court found, "[t]he

---

[7] All parties agree that GW is a releasor under the terms of the Release.

Sellers [sic] Release contains no language supporting, or even hinting, that the Sellers [sic] Release should be restricted in this manner." Id. at 438. We agree, and GW offers no evidence to support a departure from the Release's plain meaning. See Bridgestone/Firestone, Inc. v. Prince William Square Assocs., 463 S.E.2d 661, 664 (Va. 1995) ("When contract terms are clear and unambiguous, a court must construe them according to their plain meaning."). We cannot allow GW to rewrite the Release's broad language with an unsupported contention. Thus, the district court committed no error in finding that Raap is a releasee.[8]

As to GWMS, GW concedes that "[w]hile GWMS was owned by the owners of GW, from 2000 until June 2002, it was an affiliate of GW." Petr.'s Br. 42. GW made similar admissions below, and the district court accordingly found that

> between 2000 and 2002, it is indisputable that Mr. Grunley and Mr. Walsh had significant ownership in and control over GWMS, in addition to co-owning [GWJV]. Even more, GWMS and [GWJV] had a unique and close connection, since they both operated in the construction field and shared office space. The

---

[8] In an argument made for the first time on appeal, GW asserts that the Release cannot apply to Raap because he is not on a November 2007 list of "current employees" of GWI. See J.A. 3069-70. GW seems to ignore the word "past" from the Release's use of the term "past Representative." Thus, GW's argument is unavailing, as the Release includes not only "current" or "present Representatives," but expressly covers "past Representatives" as well. Id. at 2877.

17

common ownership and close working connection between these two companies compel the Court to conclude that GWMS was, between 2000 and 2002, an affiliate of [GWJV]. It necessarily follows, then, that GWMS qualifies as a "past affiliate" of "the Company" [GWI], since [GWJV] and [GWI] are the same corporate entity.[9]

J.A. 436-37. We again agree with the court's application of the plain meaning of the Release.

Despite the uncontested facts and admissions, GW now advances new arguments. First, GW argues that because Grunley and Walsh sold their interests in GWMS to Raap in June 2002, GWMS ceased being an affiliate of GW. Therefore, GW claims that GWMS is only a "past affiliate" to the extent any claims covered by the Release arose on or before June 2002. The Release does not contain a June 2002 date restriction, however. In fact, such restriction contradicts the plain language of the Release, which releases "any and all claims . . . whether known or unknown, suspected or unsuspected . . . which such Seller or any of its Related Parties now has, has ever had or may hereafter have against the Releasees arising at any time prior to Closing" on November 6, 2007. Id. at 2877. Because it is clear that all

_____

[9] The court concluded that Grunley and Walsh "maintained co-ownership of the Grunley Walsh entity until they resigned from [GWI] on November 6, 2007," and that despite the various company names, GWJV, The Grunley Walsh LLC, and GWI is "one continuous corporate entity having the same corporate identity." Id. at 435-36. The parties do not dispute this conclusion.

18

claims arising before November 6, 2007, were released, we reject GW's manufactured date restriction.

Second, GW claims that GWMS disclaimed being a "past affiliate" of GW from June 2002 through May 2007 because it qualified as a small business under the applicable federal regulations, which determine company size by adding affiliated companies. This argument is fatally flawed. As we previously found, the Release does not contain a date restriction, and the fact remains that GW concedes GWMS is a "past affiliate" prior to June 2002. This is sufficient in and of itself to find that the Release applies to GWMS. Indeed, Grunley and Walsh sold their interest in GWMS out of concern that GWMS <u>was</u> an affiliate of their other companies. <u>Id.</u> at 911. Moreover, whether GW <u>believes</u> GWMS should have qualified as a small business under federal regulations is irrelevant to whether GWMS was a "past affiliate" of GWI. The control-based definition of "affiliate" used by the court in no way depends on federal regulation of small business set-asides. <u>See</u> <u>id.</u> 433-34. This is evidenced by the second ground the district court provided for finding GWMS to be an affiliate:

> Between December 15, 2006, the date that [GWI] was formed, and May 30, 2007, the date Mr. Raap was fired, Mr. Raap served simultaneously as the owner of GWMS and President of [GWI]. Therefore, it is indisputable that a single individual possessed significant amounts of control over both companies during that span of time.

19

Id. at 437.  We therefore find that district court committed no error in finding that GWMS is a releasee.[10]

#### IV.

Because the court properly found that both Raap and GWMS come within the terms of the Release, this Court affirms the decision of the district court.[11]

AFFIRMED

---

[10] We also reject GW's final argument against application of the Release – that the claims at issue were not released because they are unrelated to the sale of the international business, the transaction during which the Release was created.  Once again, GW ignores the broad plain language of the Release, which releases "any and all claims" without qualification.  Id. at 2877.

[11] In affirming summary judgment in favor of the defendants, we necessarily reject GW's additional argument that it should have been awarded summary judgment on its Lanham Act claims.

Additionally, because we affirm the court's grant of summary judgment, we do not reach GW's argument that the court erred in excluding GW's duty of loyalty damages as a discovery sanction.