[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12389
Non-Argument Calendar

_____

D.C. Docket No. 6:18-cv-00161-ACC-GJK

ANGEL L. APONTE,

Plaintiff-Appellant,

versus

BROWN & BROWN OF FLORIDA, INC.,
d.b.a.
Brown & Brown, Inc.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 24, 2020)

Before WILSON, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Angel Aponte appeals the district court's denial of his request for a jury trial on his claims arising under the Family and Medical Leave Act and the Americans with Disabilities Act, its grant of summary judgment on various claims under the FMLA and the ADA, and its opinion denying his remaining FMLA interference claim, which it issued following a bench trial.  He argues that the district court erred in: (1) denying his request for a jury trial; (2) granting summary judgment on his FMLA interference claims where Brown & Brown, Inc.'s technical violations of the FMLA prejudiced him and he was entitled to additional time to take a licensing exam under the FMLA; (3) granting summary judgment on his FMLA retaliation claim where he alleged a causal relationship between his FMLA request and his termination; (4) granting summary judgment on his ADA discrimination claim where he alleges that B&B knew of his disability and fired him anyway; (5) granting summary judgment on his ADA failure-to-accommodate claim where he contends that he was entitled to additional time to take his licensing exam under the ADA; and (6) ruling that B&B had proved its "same decision" affirmative defense at trial.

As we will explain, Aponte has not shown that the district court erred.  We therefore affirm the district court's denial of Aponte's request for a jury trial, its grant of summary judgment, and its conclusion that B&B prevailed following the bench trial.

2

**I**

The parties are familiar with the facts, so we repeat them only briefly here. Angel Aponte was hired as a sales associate for Brown & Brown, Inc., a position that required him to obtain a Property and Casualty 2-20 license. B&B terminated Aponte on March 3, 2017, stating as its reason that Aponte had failed to acquire the necessary license. From February 27, 2017 to March 2, 2017, shortly before he was terminated, Aponte was hospitalized for ulcerative colitis. And on March 3— again, before he was terminated—he asked B&B how to file a request for a leave of absence under the Family and Medical Leave Act.

Aponte sued B&B, arguing that B&B wrongfully terminated him because he requested leave. He claimed violations of the Family and Medical Leave Act, the Florida Civil Rights Act, and the Americans with Disabilities Act. The district court granted B&B's motion to strike Aponte's demand for a jury trial because Aponte had signed an employment agreement with a jury-trial waiver provision. The district court subsequently granted B&B's motion for summary judgment on all of Aponte's claims save one: that B&B interfered with his FMLA rights by terminating him after he requested FMLA leave. After a bench trial, the district court concluded that B&B proved that it would have terminated Aponte regardless of his request for FMLA leave because he failed to obtain the required license.

Aponte appealed the district court's decisions to us.

3

## II

Aponte first claims that the trial court erred in striking his demand for a jury trial. "We review the grant of a motion to strike a jury demand de novo." *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1352 (11th Cir. 2019).

## A

While we have not directly addressed the enforceability of jury-trial waivers in the context of employment agreements, we have upheld arbitration provisions in these agreements "as valid unless defeated by fraud, duress, unconscionability, or another 'generally applicable contract defense.'" *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67–68 (2010)) (stating that the enforceability of such an arbitration provision is based on the Federal Arbitration Act). And generally, while "[t]he seventh amendment right is . . . a fundamental one," courts have recognized that "it is one that can be knowingly and intentionally waived by contract." *Leasing Serv. Corp. v. Crane*, 804 F.2d 828, 832 (4th Cir. 1986); *see also Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2d Cir. 2007) ("Although the right is fundamental and a presumption exists against its waiver, a contractual waiver is enforceable if it is made knowingly, intentionally, and voluntarily.").

**B**

Here, the record evidence demonstrates that Aponte's jury-trial waiver was knowing and voluntary. The jury-trial waiver provision in the employment agreement was written in bold and all-capital letters and set apart in a paragraph labeled "WAIVER OF JURY TRIAL." The waiver's language was straightforward, and Aponte does not dispute that he signed the agreement. Further, Aponte doesn't raise any contract defenses, such as fraud, duress, or unconscionability. Accordingly, the district court did not err in granting B&B's motion to strike.

**III**

We next consider Aponte's claims arising out of the district court's grant of summary judgment in favor of B&B. Specifically, Aponte argues that the district court erred in granting summary judgment on the following claims: (1) FMLA interference, (2) FMLA retaliation, (3) ADA discrimination, and (4) ADA failure-to-accommodate. The party moving for summary judgment bears the initial burden of establishing the absence of a dispute over a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party, who "may not rest upon mere allegation[s] . . . but must set forth specific facts showing that there is a genuine issue for trial." *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990) (quotation omitted); Fed. R. Civ. P. 56(e).

## A

Aponte argues that the district court erred in granting summary judgment on the bulk of his FMLA interference claim because B&B committed technical violations that prejudiced him.  We review a district court's grant of summary judgment *de novo*, viewing all evidence "in the light most favorable to the non-moving party."  *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011).

### 1

The FMLA grants an eligible employee the right to take up to 12 weeks of unpaid leave annually for several reasons, including "a serious health condition" that prevents the employee from performing the functions of his position.  29 U.S.C. § 2612(a)(1).  Moreover, after the completion of FMLA qualified leave, eligible employees have the right "to be restored by the employer to the position of employment held by the employee when the leave commenced" or "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."  *Id.* § 2614(a)(1).

"To preserve and enforce these rights, the FMLA creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act . . . [,] and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act."  *Jones v. Gulf*

6

*Coast Health Care of Delaware, LLC*, 854 F.3d 1261, 1267 (11th Cir. 2017) (alterations in original) (quotation marks and quotation omitted).  To make out an FMLA interference claim, Aponte must demonstrate that he was (1) "entitled to a benefit under the FMLA" and (2) "denied . . . that benefit" by B&B.  *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015).

Employers who violate the FMLA's provisions are "liable to any eligible employee affected . . . for damages" and "for such equitable relief as may be appropriate."  29 U.S.C. § 2617(a)(1).  A plaintiff can recover damages under the FMLA for "any wages, salary, employment benefits, or other compensation denied or lost . . . *by reason of the violation*," or for "any actual monetary losses sustained . . . *as a direct result of the violation*."  *Id.* § 2617(a)(1)(A)(i) (emphasis added).  The Supreme Court has thus made clear that "[section] 2617 provides no relief unless the employee has been prejudiced by the violation."  *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).  And we have held that "[e]ven if the defendant[] ha[s] committed certain technical infractions under the FMLA, [the] plaintiff may not recover in the absence of damages."  *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1284 (11th Cir. 1999).

**2**

With regard to the alleged technical violations of the FMLA, Aponte has neither argued nor demonstrated that any monetary damages he claimed stemmed

7

from those violations.  He states, in a conclusory fashion, that the technical violations "otherwise affected" his employment and "prejudiced" him but does not explain how they did so.  In the absence of any evidence showing that Aponte sustained any monetary loss or any other prejudice as a direct result of the alleged technical violations of the FMLA, Aponte was not entitled to any relief and the district court did not err in granting summary judgment on those claims.  29 U.S.C. § 2617(a)(1)(A)(i); *Ragsdale*, 535 U.S. at 89.

Aponte seems to suggest that 29 C.F.R. § 825.215(b) required B&B to give him additional time in which to take his licensing exam.  The regulation states:

> If an employee is no longer qualified for the position because of the employee's inability to attend a necessary course, renew a license, fly a minimum number of hours, etc., as a result of the leave, the employee shall be given a reasonable opportunity to fulfill those conditions upon return to work.

29 C.F.R. § 825.215(b).  By its terms, this regulation applies "[i]f an employee is *no longer qualified* for the position."  *Id.* (emphasis added).  Here, however, Aponte was never qualified for his position in the first place.  The record establishes that acquiring the 2-20 license was always a requirement of the position that Aponte held and that Aponte was aware of that fact from the time he began working at B&B until the time he was terminated.  The record is also clear that Aponte never acquired the license during the time he was employed at B&B.

8

Given that Aponte was never qualified for his position, he had no right to additional time to obtain his license under the FMLA.

## B

Aponte next argues that the district court erred in granting summary judgment on his FMLA retaliation claim.

## 1

To establish an FMLA retaliation claim, Aponte "must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1207 (11th Cir. 2001). An FMLA retaliation claim carries an "increased burden" to show that the employer's actions were motivated by a retaliatory animus. *Id.*

Where, as here, there is no direct evidence of discrimination, the *McDonnell Douglas* burden-shifting framework applies. *See Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 798 (11th Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). To establish a *prima facie* case of FMLA retaliation, Aponte must demonstrate that "(1) he engaged in statutorily protected activity, (2) he suffered an adverse employment decision, and (3) the decision was causally related to the protected activity." *Martin v. Brevard Cty. Pub. Sch.*, 543

9

F.3d 1261, 1268 (11th Cir. 2008).  Regarding the "causal link" requirement, we have recognized that

> a plaintiff must, at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action.  Since corporate defendants act only through authorized agents, in a case involving a corporate defendant the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression and acted within the scope of his or her agency when taking the action.

*Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997) (citation omitted) (analyzing a Title VII retaliation claim); *see also Brungart*, 231 F.3d at 799 (analyzing an FMLA retaliation claim and stating that "the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action" (citing *Raney*, 120 F.3d at 1197)).  "If [Aponte] makes out a prima facie case, the burden then shifts to [B&B] to articulate a legitimate reason for the adverse [employment] action."  *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006).  "If [B&B] does so, [Aponte] must then show that [B&B's] proffered reason for the adverse action is pretextual."  *Id.*

## 2

Here, even assuming that Aponte has made a *prima facie* showing of FMLA retaliation, he has failed to rebut B&B's proffered non-retaliatory reason for his termination: his failure to obtain the 2-20 license within the time allotted.  The

10

record reflects that Peter Matulis, B&B's executive vice president, determined—at the very latest, during the week of February 20, 2017 (in advance of Aponte's hospitalization beginning on February 27, 2017)—that he would fire Aponte if Aponte failed to acquire the 2-20 license by March 3, 2017. Matulis believed this decision to be self-effectuating. Further, Aponte knew this was his deadline and that he would be terminated if he did not have his license on that date. Because Aponte failed to pass the 2-20 exam by that deadline, he was terminated. Aponte has not provided any evidence to contradict B&B's proffered reason for his termination, and has, consequently, failed to meet his burden under *McDonnell Douglas*. *Hurlbert*, 439 F.3d at 1297. The district court did not err in granting summary judgment on his FMLA retaliation claim.

## C

Aponte next asserts that the district court erred in granting summary judgment on his ADA discrimination claim.[1]

### 1

The ADA prohibits, among other things, employers from discriminating "against a qualified individual on the basis of disability in regard to job application

---

[1] Aponte also appears to challenge the district court's decision as to his claims under the Florida Civil Rights Act, which are governed by the same standards as the ADA. *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1255 (11th Cir. 2007). Our analysis of his ADA claims thus applies equally to any claims he has raised under the FCRA.

11

procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a *prima facie* case of ADA discrimination, Aponte must show that he: "(1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of his disability." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (alteration adopted) (quotation omitted). The ADA defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). It further states that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." *Id.*

**2**

Aponte cannot make a *prima facie* case of ADA discrimination because he is not a "qualified individual" under the ADA. When he began working for B&B, Aponte signed a job description stating that the 2-20 license was a requirement of his position. Given that Aponte was required to obtain his 2-20 license from the

12

day he started working at B&B and that he failed to do so during his employment, he was never qualified for his position.

## D

Aponte also contends that the district court erred in granting summary judgment on his failure-to-accommodate claim under the ADA.  As with his ADA discrimination claim, Aponte must have—but has not—demonstrated that he is a "qualified individual" under the ADA.  *See Morisky v. Broward Cty.*, 80 F.3d 445, 447 (11th Cir. 1996) (stating that a plaintiff, arguing that her employer failed to provide a reasonable accommodation, must prove that "she is a qualified individual").  Because Aponte's position required him to obtain a 2-20 license and he did not do so, he was not "qualified" and therefore cannot establish that he was entitled to a reasonable accommodation under the ADA.

## IV

Aponte finally claims that the district court erred in entering judgment for B&B following the bench trial and, more particularly, in concluding that B&B proved its "same decision" affirmative defense.  "After a bench trial, we review the district court's conclusions of law *de novo* and the district court's factual findings for clear error."  *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1230 (11th Cir. 2009).  Unlike at the summary judgment stage, a district court is not required to draw all inferences in favor of one party over another at a bench trial.  *Cf. id.*

13

**A**

The rights granted by the FMLA are not absolute.  We have recognized that "an employee can be dismissed, preventing [him] from exercising [his] right to commence FMLA leave, without [the employer] violating the FMLA, if the employee would have been dismissed regardless of any request for FMLA leave." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1236 (11th Cir. 2010).  Moreover, we have held that "unrebutted evidence that the decision maker was not aware, at the time of the decision to terminate [the plaintiff], of [his] request to commence FMLA leave establishes as a matter of law that [the plaintiff's] termination was for reasons other than her requested leave." *Id.*

Federal Rule of Civil Procedure 8(c) generally requires that "a party must affirmatively state any avoidance or affirmative defense" when "responding to a pleading."  But "if a plaintiff receives notice of an affirmative defense by some means other than the pleadings, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice." *Grant v. Preferred Research, Inc.*, 885 F.2d 795, 797 (11th Cir. 1989) (quotation omitted).  In *Grant*, the defendant raised a statute-of-limitations defense for the first time in a motion for summary judgment filed approximately one month before trial. *Id.*  Because the plaintiff was "fully aware" that the defendant "intended to rely on" the defense, and because the "plaintiff d[id] not assert any prejudice from the lateness of the pleading," we held

14

that the defendant's failure to comply with Rule 8(c) did not result in a waiver.  *Id.* at 797–98.

## B

As an initial matter, we reject Aponte's argument that B&B was required to prove its affirmative defense "beyond dispute or speculation."  Aponte relies on our decision in *Martin v. Brevard County Public School*, but that case dealt with an appeal from a grant of summary judgment.  543 F.3d at 1265.  Here, however, the issue of whether B&B had proved its defense was decided at a bench trial, where the district court was empowered to make factual and credibility determinations and was not required to make all inferences in Aponte's favor.  *See Gordon*, 576 F.3d at 1230.  Given that Aponte has not provided any authority suggesting that facts had to be proven "beyond dispute" at the bench-trial stage, the district court did not err in basing its conclusions on a preponderance standard.

Moreover, Aponte failed to produce any evidence to contradict B&B's defense that he was terminated as a result of his failure to obtain the 2-20 license.  The record reflects that Matulis determined that he would fire Aponte if Aponte failed to obtain the license by March 3, 2017.  This decision was made in advance of Aponte's hospitalization.  Under these circumstances, the district court did not err in determining that B&B had proven its defense by showing—by a

15

preponderance of the evidence—that it would have fired Aponte regardless of his request for FMLA leave. *Krutzig*, 602 F.3d at 1236.

Finally, the district court did not err in considering B&B's affirmative defense, even though it was raised at the summary-judgment stage. Aponte does not explain how he was prejudiced by B&B failing to raise the defense in its answer. And further, Aponte had notice of the defense several months before the bench trial. B&B first raised the defense in its October 2018 motion for summary judgment, and the bench trial was not held until April 2019. *Cf. Grant*, 885 F.2d at 797–98 (holding that the plaintiff was not prejudiced when the defendant raised a defense for the first time one month before trial).

\* \* \*

In sum, the district court did not err in denying Aponte's request for a jury trial, granting summary judgment on his FMLA and ADA claims, and in concluding that B&B succeeded in proving its affirmative defense following the bench trial. We reject Aponte's arguments to the contrary and affirm the district court.

**AFFIRMED.**

16